JOHN R. MAGRUDER and R. R. MAGRUDER, trading as MAGRUDER & BROTHER, *vs.* CHARLES O. GAGE, surviving Partner of ADDISON GAGE & SON.

*Transfer of title to Goods by delivery to Common Carrier.*

Where the vendor has not undertaken to deliver goods, and the vendee has not designated a special carrier, a delivery to a common carrier, in the usual and ordinary course of business, transfers the property to the vendee, and the risk after such delivery is the risk of the vendee.

APPEAL from the Circuit Court for Anne Arundel County.

The facts of the case are sufficiently set out in the Court's opinion. The several exhibits referred to in the prayer, incorporated in the opinion, are the letters, bill of lading and invoice, referred to in the earlier part of the opinion.

The plaintiff's fifth prayer, mentioned in the dissenting opinion, is the one set out by the Court.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY and ROBINSON, J.J. and re-argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, ALVEY and ROBINSON, J.J.

*Alex. Randall* and *A. B. Hagner,* for the appellants.

The instruction embodies no fact from which the jury could ascertain the *terms* or *time of payment* for the cargo, and excludes from their consideration all the proof upon this point, so important in every contract of sale. In the absence of all such evidence, the conclusion of law would be that the payment was to be concurrent with the delivery to the defendants in Annapolis. *Benjamin on Sales,* 499; 2 *Kent's Com.,* 492.

The *letters* described in the instruction furnish no support to the idea that the cargo was to be at the defendants' risk. That it was "consigned to the defendants," affords no such proof, for the consignee is as often the mere agent of the shipper, as he is the owner of the cargo.

The *form* of the bill of lading is rather evidence of the *plaintiffs'* ownership, for it was given to them as shippers, requires their consent to any interference with the cargo; and expressly speaks of the defendants merely as *consignees*.

But even if the bill of lading had named the defendants as *owners*, such designation is not conclusive upon the question of ownership. 2 *Greenleaf on Evidence, sec.* 380; *Benjamin on Sales,* 282, 289.

That the defendants were to *pay the freight*, is certainly not conclusive evidence of ownership on their part. The express point is decided in so many words, in 6 *Clark & Finnelly,* 621, 622.

The conclusive evidence then, if it exist at all, must arise out of the transmission by the plaintiffs; and the receipt by the defendants of the bill of lading and invoice, as stated in the brief of plaintiffs' counsel, "their rights became perfect as soon as they had shipped the cargo, received the bill of lading, and transmitted it to the defendants."

The transmission and receipt of the bill of lading and invoice do not, as matter of law, furnish such conclusive evidence of the transfer of title and imposition of the risk of carriage upon the vendee, as justified the instruction by the Court.

If such were the correct statement of the law, no cases could be found where the Court had ruled that the title had not passed, after the receipt of the bill of lading by the vendee had been shown; but the books are full of cases to the contrary. *Dunlop vs. Lambert,* 6 *C. & F.,* 600; *Moakes vs. Nicholson,* 115 *Eng. Com. Law,* 290; *Shepherd vs. Harrison,* 4 *Queen's B. Law Reports,* 196; *Castle vs. Playford,* 5 *Exchequer, Law Reports,* 165; *Abbott on Shipping,* 326, 331,

337; *Falk vs. Fletcher,* 114 *Eng. Com. Law,* 403; *Benjamin on Sales,* 213; *Conger vs. Chicago Railroad Company,* 17 *Wisc.,* 487.

*Frank. H. Stockett* and *William H. Tuck,* for the appellee.

The ruling of the Court, was according to the true construction of the contract made between the parties, as well on the facts as on the law, and as recognized in all the elementary treatises on the subject, and by the Courts in cases too numerous to be cited, and may be stated in the following brief sentence: That where goods are consigned to A, and there is no agreement to the contrary, he is the owner of them. *Powell vs. Bradlee,* 9 *G. & J.,* 276; *Abbott on Shipping,* 403, (326); *Hall vs. Richardson,* 16 *Md.,* 397; *Chitty on Contracts,* 383; *Benjamin on Sales,* 130; *Dunlop vs. Lambert,* 6 *Cl. & Fin.,* 600; *Franklin vs. Long,* 7 *G. & J.,* 407; *Mulliken vs. Boyce,* 1 *Gill,* 60; *Parsons on Contracts,* 445; *Godfrey vs. Furzo,* 3 *P. Wms.,* 185; *Snee vs. Prescott,* 1 *Atkyn's,* 248; *Vale vs. Boyle, Cowp.,* 294.

Robinson, J., delivered the opinion of the Court.

The appellants, residents of Annapolis, wrote to the appellees, ice·dealers in Boston, to know upon what terms they would sell to them a cargo of ice, in answer to which they received the following reply.

" For a cargo to be shipped before the 10th of July, we shall charge you $5, per ton, and will get the freight as low as possible."

By letter of July 1st, 1863, the appellants directed the appellees to send a cargo of one hundred and fifty tons, and authorized them to get the *freight as low as possible.* On the 13th of July, the appellees wrote to the appellants, advising them of the shipment, enclosing account for same and the bill of lading. This letter with the inclosed papers was received by the appellants in due course of mail. By the bill of lading it appears that the ice was shipped in good order and

condition, on board of the schooner "Rio," lying in the port of Boston and bound for Annapolis, to be delivered in like good order and condition to the appellants or to their assigns, he or they paying the freight and accustomed average.

The schooner encountered rough weather and was compelled to put into New York with damaged sails. After refitting she resumed her voyage and reached Norfolk on the 18th of August, in a sinking condition. The remnant of her cargo was sold in Norfolk under the captain's supervision, and the surplus arising from the proceeds of sale, after the payment of freight and charges, amounting to two hundred and twenty-two dollars, was handed over to the appellants and by them remitted to the appellees, who refused to receive the same. This is an action of contract brought by them against the appellants to recover the value of the cargo of ice.

The main question in this appeal and one which we think decisive of the case, arises upon the following prayer granted by the Court:

"If the jury find from the evidence that the plaintiffs in 1863, were partners in trade and dealers in ice, under the name and firm of Addison, Gage & Co., in the city of Boston, Mass., and that the defendants were trading under the name of Magruder & Brother, in the city of Annapolis, on the 3d of June, in the year 1863, and as such firm wrote to the plaintiffs, the letter offered in evidence of that date and proved under the commission as Exhibit E, and that the plaintiffs in reply thereto, wrote to the defendants the letter dated June 22d, proved under the commission as Exhibit H, and that on the 1st of July, the defendants addressed to the plaintiffs the letter returned with the commission and marked A, and that on the 6th of July, the plaintiffs wrote to the defendants the letter of that date marked B, and that these letters were received by the persons to whom they were respectively addressed, and that the plaintiffs did on the 11th of July, 1863, ship on board the schooner "Rio" one

hundred and fifty-one tons of ice, at and from the port of Boston to Annapolis, consigned to the defendants, and that the said schooner sailed on her said voyage on the 11th of July, 1863, and that the plaintiffs sent by the mail of the 13th of July, 1863, to the defendants the bill of lading and invoice of said shipment marked F and G, and that these were received by the defendants in due course of mail, and that the plaintiffs made no other agreement in reference to the sale and delivery of said ice, than is shown by the said letters, bill of lading and invoice, then the plaintiffs are entitled to recover the value thereof of said ice, after deducting any amount which the jury may find to have been paid to plaintiffs."

This prayer asserts as a proposition of law, that the facts therein stated, in the absence of any other agreement on the part of the plaintiffs in regard to the delivery of the ice, constituted a complete sale and delivery of the same to the defendants.

The question as to what acts are necessary to be performed by a vendor under an executory agreement for the sale of unspecified goods, in order to transfer the title to the vendee and subject him to the risk of the carriage, depends entirely upon the agreement either express or implied between the parties. If the vendor undertakes to make the delivery himself at a distant place, thus assuming the risk in the carriage, the carrier becomes the agent of the vendor, and the property will not pass until the delivery is actually made. On the other hand, if the goods are delivered to a carrier specially designated by the purchaser, he becomes the agent of the latter, and the title to the property as a general rule will pass the moment the goods are despatched. Should the contract of purchase be silent as to the person or mode by which the goods are to be sent, a delivery by the vendor to a common carrier in the usual and ordinary course of business, transfers the property to the vendee. Or, as Mr. BENJAMIN expresses it in his late Treatise on Sales, "where goods are delivered by

the vendor in pursuance of an order, to a common carrier for delivery to the buyer, the delivery to the carrier passes the property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee." *Benjamin on Sales*, 288. So early as the case of *Dutton vs. Solomonson*, 3 *B. & P.*, 582, Lord ALVANLEY said, he considered it as settled law, "that if a purchaser order goods to be sent by a carrier, though he does not name any particular carrier, the moment the goods are delivered to a carrier it operates as a delivery to the purchaser."

It is unnecessary to cite authorities in support of this well established rule. The cases are collected and reviewed in a very satisfactory manner in *Benjamin on Sales*, (246–271,) and the rule will be found recognized in its broadest terms by all of the elementary writers on the subject. *Story on Sales*, sec. 306; *Hilliard on Sales*, top page 119; *Chitty on Contracts*, —.

If, therefore, in this case, the appellants directed the appellees to send them a cargo of ice, and they delivered it to a common carrier to be freighted for and on account of the appellants, and there was no other agreement in regard to the sale and delivery of the same, the Court was right in saying to the jury that the title passed to the appellants, and that the appellees were entitled to recover.

None of the cases relied on by the appellants are in conflict with these views. In *Dunlop et. al. vs. Lambert et. al.*, 6 *Clark & Fin*, 600, the suit was brought by the *consignor* against the *carrier* to recover for the loss of the goods, and it was decided that although as a general rule where goods are delivered to a carrier, the *consignee* is the proper person to bring the action against the carrier, yet if the consignor makes a special contract with the latter for the carriage, such a contract supersedes the necessity of showing the ownership in the goods, and the *consignor* may maintain the action against the *carrier* though the goods may have been the property of the consignee. The Lord Chancellor, however,

said : " It is no doubt true as a general rule, that the delivery by the consignor to the carrier is a delivery to the consignee, and that the risk is after such delivery the risk of the consignee. This is so if without designating the particular carrier the consignee directs the goods shall be sent by the ordinary conveyance; the delivery to the ordinary carrier is then a delivery to the consignee, and the consignee incurs all the risk of the carriage." In that case evidence was offered that by the terms of the contract, the seller was to deliver the *puncheon* on the quay at Newcastle-upon-Tyne, before the title was to pass to the purchaser; and it was held that the Lord President in the trial below erred in stating it as a rule without an exception, because the freight and insurance were paid by the consignor who charged the consignee with their amount, the risk was therefore necessarily with the consignee—that there was consequently no right to inquire what was the particular transaction between the parties. In other words the Court below had erred in excluding from the jury the agreement between the parties in regard to the delivery of the puncheon.

But no such objection can be urged against the prayer of the Court in this case. The question as to whether there was any other agreement between the appellants and appellees in regard to the sale and delivery of the ice, than that to be found in the correspondence and bill of lading, was fairly submitted to the jury, and the plaintiffs' right to recover upon the finding of the facts set forth in the prayer, was based upon the express proviso that there was no other agreement in regard to the delivery of the ice.

In *Blanchard et al. vs. Page et. al.,* 8 *Gray,* 281, the action was also brought by the consignor against the carrier upon a special contract, and the precise question in the case, says SHAW, C. J., is " whether the plaintiffs named as shippers of the goods in the bill of lading may maintain an action for damages done to the goods, after they were received by the defendants at the ship for the purpose of carriage, and before

Magruder & Brother *vs.* Gage.

they were delivered to and received by the consignees, at New Orleans, named in the bill of lading, although it is shown by evidence *aliunde* that the plaintiffs had no right of property general or special in the goods, and no other right or interest in their safe carriage, except that arising from the bill of lading." It was held that the consignor could maintain the action upon the special contract for the carriage of the goods, although the Court admitted that the delivery of them to a common carrier vested the general property in the purchaser.

Exceptions to the general rule, as above stated, it is true are to be found arising in cases, where by the express terms of the bill of lading the goods are to be delivered to the consignor or his assigns, or where there is some other evidence showing the intention of the consignor to retain the property notwithstanding the delivery to the carrier. This is frequently done where the parties living at a distance from each other contract by correspondence, and where the vendor is desirous of securing himself against the insolvency or default of the buyer. The cases of *Warle vs. Baker*, 2 *Ex.*, 1 ; *Jenkyns vs. Brown*, 14 *Q. B.*, 496, and *Ellershaw vs. Maginac*, 6 *Ex. Rep.*, 570, were decided upon this principle.

The decision of the law arising upon this prayer makes it unnecessary to consider the other exceptions relied on by the appellants.

Finding no error in the ruling below, the judgment will be affirmed.

                                        *Judgment affirmed.*

(Decided 7th December, 1870.)


Stewart and Maulsby, J., dissented.

They being of opinion that there was evidence in the cause which ought to have been submitted to the jury, tending to prove that " the cargo of ice in controversy was shipped from Boston at the risk of the plaintiffs, and was not to be paid for

by the defendants until the same should be delivered to them or their assigns," and consequently that the Court erred in granting the plaintiffs' fifth prayer, which concluded the case in favor of the plaintiffs—upon the finding by the jury of the facts therein enumerated.