(159 App. Div. 323)

WESTMORELAND COAL CO. v. SYRACUSE LIGHTING CO.

(Supreme Court, Appellate Division, Fourth Department. December 3, 1913.)

1. SALES (§ 161*)—DELIVERY—WHAT CONSTITUTES.

 Where plaintiff sold defendant coal to be delivered at its dock, and when the coal was brought there in barges the dock was busy unloading other boats containing plaintiff's coal, so that the barges could not reach the dock, the carrier in tying up the barges on the opposite side of the canal, where they were lost, was acting as the servant of plaintiff and not the defendant.

 [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 377–380; Dec. Dig. § 161.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. SALES (§ 178*)—ACCEPTANCE—WHAT CONSTITUTES.**

Where plaintiff sold defendant coal to be delivered at defendant's dock, and when the coal arrived in barges the dock was full so that the barges could not land, the entry on defendant's books of the time of the arrival, made for the purpose of verifying claims for demurrage, did not constitute an acceptance and receipt of the coal by defendant passing title to it, so as to render it liable for the purchase price, even though the barges sank and the coal was lost.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 451–455; Dec. Dig. § 178.*]

**3. SALES (§ 161*)—TITLE—PASSAGE OF TITLE.**

Where plaintiff contracted to sell to defendant coal in certain amounts to be delivered at defendant's dock, the loading of the coal in barges and the transportation of the barges to within a few hundred feet of defendant's dock was not a delivery which passed title to defendant, so as to render it liable where the barges were sunk and the coal was lost while they were tied up on the opposite side of the canal waiting for a place at the dock, for the contract contemplated delivery at defendant's dock, and the mere loading of the coal in the barges did not pass title; this conclusion being strengthened by Personal Property Law (Consol. Laws, c. 41) § 100, subd. 5, added by Laws 1911, c. 571, providing that, where a provision in a contract of sale requires the seller to deliver to the buyer the goods sold, the title does not pass to the buyer until the goods have been delivered or reached the place agreed upon.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 377–380; Dec. Dig. § 161.*]

Kruse, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by the Westmoreland Coal Company against the Syracuse Lighting Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Plaintiff sought to recover in this action the purchase price of two canal-boat loads of coal shipped by it to the defendant, under a contract made by the two parties of which the following is a copy:

"Agreement made this twenty-fourth day of April, A. D. 1906, between the Syracuse Lighting Company, a corporation of the state of New York and the Westmoreland Coal Company, a corporation of the state of Pennsylvania.

"In consideration of the mutuality hereof it is hereby agreed between the parties hereto, as follows, viz.:

"Quantity. The seller hereby sells and agrees to deliver to the buyer, and the buyer agrees to purchase and receive fifty thousand (50,000) tons of ¾ screened coal to be shipped and taken at the rate of twenty-five thousand (25,000) tons each, during the seasons of navigation, 1906 and 1907.

"This contract is subject to the contingencies of transportation, car supply, strikes and other causes beyond our control, delaying or preventing deliveries. Railroad weights to govern settlements.

"Price, $2.82½ per 2,000 lbs. delivered alongside Syracuse Lighting Company's dock at Syracuse, N. Y., as heretofore.

"Payable as follows: For coal delivered in 1906: On the 15th of each month for one-half the amount of coal received during the previous month."

Argued before KRUSE, P. J., and ROBSON, FOOTE, and LAMBERT, JJ.

William Nottingham, of Syracuse, for appellant.

Jerome L. Cheney, of Syracuse, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ROBSON, J. The parties to the contract above quoted contemplated that plaintiff in fulfillment of the contract would ship the coal therein mentioned by rail from plaintiff's mines to Watkins, N. Y. It was to be there loaded on canal boats, and thence taken by boat to Syracuse, N. Y.; and there delivered alongside defendant's dock as theretofore, plaintiff having furnished defendant with coal under prior contracts between the parties. The two boats with their loads of coal, which are the subject of this action, reached Syracuse and approached to within 300 or 400 feet of defendant's dock, which was on the north, or towpath, side of the canal. They could not at once be docked and unloaded because two other boats then occupied the dock. These latter boats contained coal theretofore delivered by plaintiff under its contract; and their cargoes were then being unloaded by defendant. For this reason and also (as the evidence shows and the trial justice finds)—

"because the rules governing traffic upon the canal required it, the two boats in question were moved over to the south side of the canal, nearly opposite the defendant's dock to await their turn for being unloaded, until the unloading of the boats already at the dock was completed."

Notice of the arrival of the boats was given to defendant, the circumstances of which and of the casualty, which thereafter ensued causing the total loss of the coal, are succinctly stated in the findings, as follows:

"That upon the arrival of the said two boats carrying the coal in question in this action at said point, 300 or 400 feet west of the defendant's dock, as above stated, the captain and man in charge of the boats notified the defendant of their arrival, and the defendant entered said boats as having arrived at the dock at 12 o'clock noon on July 30, 1907, in its books kept for that purpose. That at about 2 o'clock on the same day, a break occurred in the banks of the Erie Canal a short distance west of the defendant's dock, and, without any fault on the part of the plaintiff, the boats with the cargoes of coal in question were drawn into said break and lost."

It was not unusual for boats to be thus delayed in docking and unloading. That had been true as to other deliveries of coal shipped by plaintiff to the defendant.

[1] If the coal in question had not been in fact delivered to the defendant before it was lost, then the carrier still remained the agent of plaintiff for the purpose of making delivery of it under the contract. It is clear that the carrier's duty in making the delivery had not at that time ended. He still had to place the boats alongside defendant's dock. This he had not in fact done, though the boats at one time had approached within a few hundred feet of the dock. It is true that had the dock, at the time, not been completely occupied with other boats, which were then unloading, he would have done so. But defendant was not responsible for this delay in laying the boats alongside the dock. The boats already at the dock were discharging their cargoes of coal, which plaintiff, by its carrier in control of those boats, had previously delivered to defendant under the contract. Plaintiff was fully advised before the contract was made that the capacity of the dock was limited, so that only two boats could be there unloaded at the same time. There is no question that defendant was diligent in unloading the boats then at its dock. The arrival of the two boats, concerning

which this controversy has arisen, before the dock was cleared for their reception, was due only to the carrier's management of their transportation. The carrier for this purpose was plaintiff's, not defendant's, agent. Taking them to the side of the canal opposite defendant's dock and tying them up where they were afterwards lost was the carrier's act. Defendant gave no direction as to their management, or what should be done with them.

[2] The entry on defendant's books of arrival of the boats did not in fact indicate actual delivery to nor receipt by the defendant; but was, as the evidence shows, simply a concession to plaintiff's interest for the sole purpose of fixing a time from which subsequent possible claims of boat captains against plaintiff for demurrage could be corrected and verified.

[3] It is suggested that when plaintiff placed the coal on these boats there was an appropriation of it in fulfillment pro tanto of the executory contract for delivery of coal. While this may have been an actual appropriation by plaintiff to that end, yet it did not complete what it had agreed to do before title passed to the defendant. Delivery of the coal was as much a part of its duty as actual selection and appropriation of it. Delivery of the coal at the place specified in the contract was required to be made, and then only would the defendant's assent to such appropriation in part fulfillment of the contract be established. Delivery was not made. Therefore title had not passed to defendant. Grant v. United States, 74 U. S. (7 Wall.) 331, 19 L. Ed. 194; Bigler v. Hall, 54 N. Y. 167; McNeal v. Braun, 53 N. J. Law, 617, 23 Atl. 687, 26 Am. St. Rep. 441; Magruder v. Gage, 33 Md. 344, 348, 3 Am. Rep. 177. The case of Terry v. Wheeler, 25 N. Y. 520, 525, which is now urged as authority for a different view as to the effect of a contract requirement of delivery by the seller, does not seem to be in point, as appears from the following statement in the opinion in that case:

"If the payment was to be made on or after delivery, at a particular place (as it was in the case now before us), it might fairly be inferred that the contract was executory, until such delivery; but where the sale appears to be absolute, the identity of the thing fixed, and the price for it paid, I see no room for an inference that the property remains the seller's, merely because he has engaged to transport it to a given point."

Perhaps it may not be amiss to call attention to the fact that since this action was begun the principle, which seems to me to be decisive of this case, has been embodied in a provision of the statutory law of this state. By subdivision 5 of section 100 of the Personal Property Law (Consol. Laws, c. 41), added by chapter 571, Laws 1911, the effect of a provision in a contract of sale requiring the seller to deliver to the buyer the goods sold is declared to be, presumptively at least, that the property therein does not pass to the latter until the goods have been delivered to him, or reached the place agreed upon.

The judgment should be affirmed, with costs. All concur, except

KRUSE, P. J. (dissenting). The practical question here is which of the parties shall bear the loss of the two boat loads of coal, which

were lost owing to a break in the canal occurring while the boats were waiting to be unloaded, the plaintiff, the seller, or the defendant, the buyer. The solution of that question does not depend so much upon whether the plaintiff had delivered the coal alongside the dock, within the meaning of the contract. That is a mere circumstance to be taken into account in determining the controlling question as to whether the title to the coal had passed to the defendant before it was lost, or still remained in the plaintiff. If there was an appropriation of the specific coal to the contract, assented to by the defendant after the coal reached Syracuse, as I think should be found as a fact from the evidence, the title passed to the defendant, and the loss must fall upon it. Even if the evidence is sufficient to make that question one of fact, I think it should be found in favor of the plaintiff.

It may be, as defendant's counsel contends, that the record of arrival of boats was kept by the defendant to protect the plaintiff against unfounded claims for demurrage; but the record and surrounding circumstances also establish that the defendant knew that this particular coal had been set apart to it under the terms of the contract and was clearly identified by both the buyer and the seller. Not only did the defendant know the precise time and place of arrival of the coal, but a record of the quantity, as well, was made by it. The identification of the coal as the subject of the sale was complete.

Although the contract was originally executory, it was as to the coal in question so far executed before it was lost as to pass the title. As regards the passing of the title, it was in effect the same as though the coal had been set apart and identified as the subject of the sale at the time of the making of the contract. The subsequent appropriation of the coal to the contract was sufficient to pass the title to the defendant. Cook v. Millard, 65 N. Y. 352, 366, 22 Am. Rep. 619; Terry v. Wheeler, 25 N. Y. 520; 28 Am. & Eng. Ency. (2d Ed.) 1054, 1058, and cases there cited. Although the coal may not have been delivered alongside the dock within the meaning of the contract, that was made impossible by a cause for which the plaintiff was not responsible, and if the title thereto had passed before the break in the canal, as I think it had, the loss of the coal should fall upon the defendant.

If I am right, it follows that the judgment should be reversed.