Norman B. Foot et al., Appellants, *v.* Loren W. Marsh et al., Respondents.

In order to substitute an arrangement between the parties for a manual delivery so as to vest the title under a contract of sale of a quantity of property mixed with an ascertained and defined larger quantity, the portion sold must be so clearly defined that the purchaser can take it, and he must be invested with the right to take it.

Defendants executed to plaintiffs a receipted bill of sale of 100 barrels and 4,000 gallons of oil, "to be delivered when called for, subject to twenty shillings per month storage, the quality of the oil to be like the sample delivered." The oil was understood to be a portion of 150 barrels, averaging forty gallons each, consisting of three different qualities, 68 barrels corresponding with the sample, 46 of a superior quality, and the residue inferior. When plaintiffs called for the oil defendants delivered 100 barrels, containing but 1,821 gallons. The diminution in quantity occurred by leakage after the execution of the bill of sale. In an action brought to recover for the deficiency,—*Held*, that the contract was an executory, not an executed one, and plaintiffs were bound to deliver the quantity specified in the contract. The case of *Kimberly* v. *Patchin* (19 N. Y., 337) distinguished.

(Argued September 18, 1872; decided January term, 1873.)

Appeal from order of the General Term of the Supreme Court in the fifth judicial district, reversing judgment in favor of plaintiff, entered upon a verdict, and granting a new trial.

This action was brought to recover damages for the alleged breach of a contract for the sale and delivery of a quantity of oil. On the trial it appeared that a party in Syracuse having about 150 barrels of oil consigned to him for sale, forty-six of which was known as Murray oil, forty-seven as Buffalo and Erie oil, thirty-six as Lemon oil, and twenty-one barrels of oil marked V. B. That the Murray oil had preference to the other oils on account of its reputation, and was worth two cents per gallon more than the Buffalo and Erie oil, or the oil in barrels marked V. B., and that the thirty-six barrels known as Lemon oil were inferior to either of the other descriptions, and that a portion of the entire quantity

being then in the cellar of the warehouse of Thompson, Gage & Co., and the residue in the cellar of the warehouse of a Mr. Davis of that place, proposed to sell them to the defendants at sixteen cents per gallon. The defendants, not caring to purchase the whole, replied that if they could sell a portion, and retain a portion, they would buy. The consignee thereupon gave to one of the defendants a sample of oil, which, as the consignee at first testified, was a poor specimen of the most inferior oil, but upon cross-examination it appeared to have been taken from the Buffalo and Erie oil, with which the defendants went to the plaintiffs' place of business at Rome, Oneida county, and exhibited to them the sample; told them where the oil was, and proposed to sell to them a portion of the whole 150 barrels. An agreement was finally concluded for a sale to the plaintiffs of 100 barrels of oil, by the sample then exhibited, for which the plaintiffs were to give their note at three months; and as the barrels contained different quantities, in order to ascertain the amount for which the note should be given it was agreed that each barrel should contain an average of forty gallons, in all 4,000 gallons, and that they should be subject to twenty shillings storage per month until called for. There was upon the trial a conflict in the parol evidence as to whether it was not a part of the agreement for the purchase and sale of the oil that the defendants, and not the plaintiffs, should risk the leakage. There was also a conflict in the evidence as to whether it was not a part of the agreement that the defendants should set apart 100 barrels containing an average of forty gallons to the barrel, and as to whether they did not so set it apart in the place of its storage. It also appeared that after the parties had concluded all negotiations and come to an agreement for the sale and purchase of the oil the plaintiffs executed and delivered to the defendants their note for the $870 (the amount agreed upon), and the defendants executed and delivered a bill of sale, as follows:

" N. B. Foot & Co., bought of Marsh, Delaye & Rogers, 100 barrels, at twelve shilling, $150 ; 4,000 gallons of oil at

eighteen cents, $720=$870. Received payment by note at three months from June 7, 1862.

"MARSH, DELAYE & ROGERS."

"The above oil is to be delivered when called for, subject to twenty shillings per month storage, and the quality of the oil is to be like the sample delivered. Marsh, Delaye & Rogers."

Defendants thereupon accepted the offer previously made by the consignee for the sale of the whole 150 barrels. When the plaintiffs' note matured they paid it, and afterward, on the 11th of November following, called upon the defendants for a delivery of the oil, and were shown 100 barrels which contained in all but 1,821 gallons, worth from five to ten cents per gallon less than the sample by which they purchased. The evidence tended to show that the loss occurred by leakage from the barrels in which it was stored, and that the depreciation in quality was largely if not entirely attributable to the same cause. It also appeared that the remaining 2,179 gallons, if equal to the sample, would, at the time the plaintiffs called for a delivery of the oil, have been worth $1,198.45. The defendants' counsel objected to proving a deficiency, and, after the evidence closed, insisted that by the writing the contract for its sale was not executory, but an executed contract, and in substance, if any loss was thereafter occasioned by leakage, it was the plaintiffs', and not the defendants' loss, and hence, that there was no question for the jury. But the court ruled otherwise, and the defendants excepted.

The court charged the jury, that if from the evidence they should find that it was agreed between the parties that the defendants should set apart 100 barrels of oil, averaging forty gallons to the barrel, of a quality equal to the sample, and that they *did* set apart that number of barrels containing that average quantity, and of a quality equal to the sample furnished, that from thenceforth the oil was at the plaintiffs' risk, and they could not recover. But if, on the contrary there was no such agreement made or authority given the defendants to set apart the oil, that then the contract became

from its terms, a contract to deliver 4,000 gallons of oil when called for, and that the defendants were bound to have it on hand when called for. To this part of the charge the defendants excepted. The court further charged, that if there was no authority given the defendants to set apart the oil, there was a deficiency for which the plaintiffs were entitled to recover $1,198.45 with $273.10 interest, from the time of demand, making in all $1,471.55. To so much of the charge as instructed the jury to allow interest, the defendants excepted. The jury rendered a verdict for $800, and thereupon the defendants upon the minutes moved for a new trial, which was denied, and judgment ordered and entered upon the verdict.

*D. M. K. Johnson* for the appellants. Under the contract no title to any barrels passed to the plaintiffs. (Blackburn on Sales, ed. 1847, 1848, 1849, marginal paging, 122, 123 ; Long on Sales, 154, 157, and cases cited; Hilliard on Sales, § 3, chap. 3115, ed. 1841 ; *Field* v. *Moore,* Lalor's Sup. to Hill & Denio, 420, 421 ; *Rapelye* v. *Mackey,* 6 Cow., 251, 252, and cases cited.) There was no intention on the part of defendants that the sale should pass the title at once. (*Kimberly* v. *Patchin,* 19 N. Y., 330 ; *White* v. *Whilkes,* 5 Taunt., 176 ; Long on Sales, 152, 155.)

*J. D. Kernan* for the respondents. The written agreement vested in plaintiffs title to the property purchased, without actual delivery or separation. (*Kimberly* v. *Patchin,* 19 N. Y., 330, 333, 337 ; *Wooster* v. *Sherwood,* 25 id., 278, 284, 285 ; *Whitehouse* v. *Frost,* 12 East, 614 ; *Hinde* v. *Whitehouse,* 7 id., 558 ; *Olyphant* v. *Baker,* 5 Den., 379 ; *Lansing* v. *Turner,* 2 J. R., 13 ; *Waldron* v. *Chase,* 37 Me., 414 ; 2 Kent [1st ed.], 496 ; id. [11th ed.], 664.) Plaintiffs' oral evidence, as to what was said about guaranteeing them against leakage, did not legally change the terms or effect of the written contract. (*Parkhurst* v. *Van Cortland,* 1 J. Ch., 273 ; *Fish* v. *Hubbard,* 21 Wend., 651 ; 1 Greenl. Ev., §§ 298, 300,

301.) The oil was at the risk of the plaintiffs. (*Terry* v. *Wheeler*, 25 N. Y., 520, 524; *Lansing* v. *Turner*, 2 J. R., 13, 16.) If the contract was executory, plaintiffs were not entitled to recover for defect in quality. (*Reed* v. *Randall*, 29 N. Y., 358.) The verdict was against the evidence and the charge of the court, and cannot be sustained. (*Putnam* v. *Hubbell*, 42 N. Y., 106; *Conrad* v. *Williams*, 6 Hill, 444; *Vance* v. *Phillips*, id., 433; *Dolsen* v. *Arnold*, 10 How. Pr. R., 528; *Newton* v. *Pope*, 1 Cow., 109, 110.)

Gray, C. The principal question presented for our consideration arises upon the defendants' exception to that portion of the charge given by the judge to the jury, in which he stated, in substance, that if no agreement was made or authority given to the defendants to set apart for the plaintiffs the oil described in the contract, that then the contract, from its terms, became a contract to deliver 4,000 gallons of oil when called for, and that the defendants, in order to comply with the call, were bound to have that quantity on hand whenever the call should be made. This case is by the defendants likened to the case of *Kimberly and others* v. *Patchin* (19 N. Y., 330), and the grounds upon which this portion of the charge is claimed to be erroneous is, that the contract, when read by the light of the circumstances surrounding it, is in principle, like the contract in that case, for the sale of 6,000 bushels of wheat, parcel of 6,249 bushels, at seventy cents per bushel, of which no separation or manual delivery was made, but as a substitute for a manual delivery, and to constitute the contract for its sale an executed, not an executory contract, the vendor gave to the purchaser his receipt for it, agreeing to deliver it to his order, free of all charges, whereupon the vendor was held to have constituted himself the bailee of the wheat, and to have thenceforth stood in that relation to the purchaser and the property; to render the contract effectual as an executed contract from the time it was made, the purchaser must have been invested with the right, after demand, to take the property. This was a right the defendants at the time

of making the sale had no power to confer, they not being at the time the owners of any portion of it; nor did they, in the place of a manual delivery, give to the plaintiffs their receipt for it, and thus attempt to constitute themselves the bailees of the plaintiffs and of the oil, as did the vendor of the wheat in *Kimberly* v. *Patchin.* If the 150 barrels of oil, of which the 100 barrels and the 4,000 gallons were understood to be a part, were, like the wheat, all of the same quality, so that nothing but the quantity, without reference to quality, was to be taken from the larger amount, the extrinsic facts that the sale was at a profit of only two cents per gallon, and the risk of leakage during the summer months, so largely exceeded the profits of the sale, it might be urged, with more plausibility than it now can, that the agreement of the defendants to deliver the barrels and oil when called for was like the agreement contained in the receipt in *Kimberly* v. *Patchin* to deliver the wheat to the order of the purchaser, and that the defendants should, under the circumstances, as was the vendor in that case, be regarded as the bailees of the plaintiffs. But, in order to substitute an arrangement between the parties for a manual delivery of a parcel of property mixed with an ascertained and defined larger quantity, it must be so clearly defined that the purchaser can take it, or, as the assignee of the purchaser did in *Kimberly* v. *Patchin,* maintain replevin for it. In this case the larger quantity, parcel of which was understood to be contracted to the plaintiffs, consisted of 150 barrels containing three different qualities of oil, but sixty-eight of which (forty-seven of the Buffalo and Erie oil and twenty-one barrels, marked V. B.) corresponded with the sample by which the 100 barrels were sold. The residue, forty-six barrels of the Murray oil, was superior to the sample; and thirty-six, known as the Lemon oil, were inferior to the sample. The plaintiffs would not have the right to take the Murray or superior oil, and could not be compelled to take the Lemon or inferior oil. And if the sample was, as the witness at one time stated, a poor sample of the most inferior oil, then but thirty-six barrels of that

description, containing less than 1,500 gallons, could have been selected from the whole quantity, and hence, the plaintiffs were without adequate means of redress, unless by action, for failing to deliver the quantity of oil sold conforming to the sample. The fact that the oil, which was the subject of the sale, was understood by the plaintiffs to be a parcel of a larger quantity, and that the sale was made at a profit of only two cents per gallon, while the risk of loss by leakage and evaporation was very large, are circumstances that would go far to prove that the defendants did not understand the legal import of the writing drawn and subscribed by them, or that they were overreached by the plaintiffs, who suggested their terms after, as one of them had testified, they refused to purchase, unless the defendants would guarantee them against leakage, which the defendants refused to do. But as no question was raised by the pleadings, or elsewhere, as to a reformation of the contract, we must regard it as expressing the intentions of the parties and give it the interpretation which, under the circumstances, its language plainly imports. The charge was more favorable to the defendants than a fair construction of the written contract warranted. The conversations, out of which the defendants sought to establish an agreement between the parties that the defendants might set apart the 100 barrels of oil for the plaintiffs, as well as the conversations as to the guaranty against loss by leakage, were all prior to the reduction of their agreement to writing and should have been excluded from the consideration of the jury, leaving the writing as the only evidence of the agreement to be interpreted by the aid of extrinsic facts. No error was committed in the instructions to allow interest. The verdict was more favorable to the defendants than the charge warranted; of that, however, they cannot, upon this appeal, complain.

The order appealed from should be reversed.

All concur.

Order reversed.