JOHN C. LIGHTHOUSE, Respondent, *v.* THE THIRD NATIONAL BANK OF BUFFALO, and SETH W. WARREN, as Receiver of the FARMERS AND MECHANICS' BANK OF BUFFALO, Appellants, Impleaded with Others.

1. SPECIFIC PERFORMANCE OF CONTRACT — SUBJECT-MATTER NOT IDENTIFIED. Specific performance of a contract for the purchase of bark cannot be ordered when the bark to be delivered on the contract is an unascertained and unidentified portion of a larger quantity.

2. LIEN OR EQUITY OF PURCHASER IN CASE OF UNIDENTIFIED PROPERTY. The use of part of the proceeds of notes given on the purchase of a specified quantity of bark, to pay, without the purchaser's knowledge or direction, certain "peeling" charges on bark of a third party who, by an independent contract with the seller had agreed to deliver to the purchaser the agreed quantity of bark, when that has not been ascertained or identified, but remains part of a greater quantity, does not create any lien upon or equity in the bark in favor of the original purchaser, as against a subsequent purchaser from the third party, who takes it only for an antecedent indebtedness; but the transfer is simply a preference of one creditor over another.

*Lighthouse* v. *Third National Bank,* 25 App. Div. 630, reversed.

(Argued February 6, 1900; decided March 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 19, 1898, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at an Equity Term.

On or about June 28, 1893, the Morrison Run Lumber Company, a copartnership, entered into a contract with the plaintiff by which the former agreed to deliver to the latter one thousand cords of good, merchantable bark on board W. N. Y. & P. R. R. cars at Rochester, at the rate of five cars per week, commencing not later than July 15, 1893, for which the plaintiff agreed to pay seven dollars and fifty cents per cord of twenty-two hundred pounds. Payments were to be made in the following manner: "Three notes of one thousand dollars each, dated June 28, 1893, given as an advance payment on the above-mentioned bark; the sum of three dol-

lars per cord to be deducted from the full amount until enough has been delivered to pay the above notes; the balance, four dollars and fifty cents, to be paid on the 10th of each month for all bark shipped the previous month." This contract was agreed upon at Rochester between one Droney, the agent of the Morrison Run Lumber Company, and the plaintiff. The contract was drawn in duplicate. One copy thereof was signed by the plaintiff, and Droney took both copies to French, the president of the Morrison Run Lumber Company, for signature. At the same time the plaintiff gave to Droney his three promissory notes, dated on that day, for one thousand dollars each, the first of which was payable in sixty days and the other two in three months from the date thereof, to the order of said Morrison Run Lumber Company, at the Exchange National Bank of Olean, N. Y. Droney took said contract and notes to said French, and the latter, before executing the contract with the plaintiff, procured a contract from the United Lumber Company of Liberty, Pa., in the following form:

"This memorandum witnesseth that the United Lumber Company of Liberty, Penna., have sold to the Morrison Run Lumber Company, to be delivered to J. C. Lighthouse, of Rochester, N. Y., One thousand (1000) cords of bark of this year's peeling, on the jobs of Duncan McRea, and the said Duncan McRea is hereby empowered and authorized to act for the said United Lumber Company and make deliveries of the same according to orders of the Morrison Run Lumber Company, and to deliver to them the one thousand (1000) cords of bark as soon as it is peeled in excess of the one-fourth of the bark to be delivered to A. Healey & Sons.

"Shipments of said bark to be made at the rate of from two to five cars per week, beginning on or before July 15th hereafter, the said Morrison Run Lumber Company hereby assuming to pay upon the said bark the bills that will be due the said Duncan McRea for peeling and loading the same, which shall not exceed three dollars and twenty-five cents ($3.25) per

cord, and shall account to J. C. French for the remainder of
the proceeds of the bark at the rate of seven dollars and fifty
cents ($7.50) per cord, delivered F. O. B. cars, Rochester, N.
Y., as per sale to J. C. Lighthouse. To all of which we
mutually agree.

> "UNITED LUMBER COMPANY,
>            "G. D. BRIGGS, *President.*
> "MORRISON RUN LUMBER COMPANY.

"I hereby consent to the sale of one thousand (1000) cords
of bark to the Morrison Run Lumber Company, as above set
forth.

> "J. C. FRENCH."

Immediately upon the execution of the last-mentioned con-
tract said French, for and on behalf of the Morrison Run
Lumber Company, signed the contract with the plaintiff and
mailed it to him. On or about June 30th the notes delivered
by the plaintiff to said Droney for the Morrison Run Lumber
Company were discounted, and out of the proceeds thereof said
French paid to McRea eighteen hundred and twenty-five dol-
lars ($1,825.00). At this time there were more than one thou-
sand (1,000) cords of bark peeled and corded on what is known
as the "Boody lands" in McKean county, Pa., which are the
same lands referred to in the contract between the United
Lumber Company and the Morrison Run Lumber Company
as "the jobs of Duncan McRea." None of the bark men-
tioned in either of said contracts was ever delivered to the
plaintiff. On June 30th, 1893, and until August 30th, 1893,
the Morrison Run Lumber Company, which was owned by
French, and the United Lumber Company, which was practi-
cally owned by Adelpha C. Briggs, were largely indebted to
the defendants, the Third National Bank of Buffalo, and the
Farmers and Mechanics' Bank of Buffalo, N. Y., for loans
and advances theretofore made by said banks upon notes then
held by them. In the month of August the officers of said
banks began pressing the said United Lumber Company and
the Morrison Run Lumber Company for payment or security.
On August 30th, 1893, French gave to the Farmers and

Mechanics' Bank a written instrument by which he transferred to it all his rights in and to certain contracts for the purchase and sale of hemlock timber bark and other timber and lumber, made between Adelpha C. Briggs and others and himself on January 11, 1892, and "all interests or rights I may have in any trees, lumber, bark upon the tract of land in the townships of Liberty and Norwich, McKean County, Pa., the title to which is in Adelpha C. Briggs."

On the 31st day of October, 1893, the Morrison Lumber Company, which was a corporation as distinguished from the Morrison Run Lumber Company, the copartnership above mentioned, executed and delivered to the defendants, the Third National Bank of Buffalo, and the Farmers and Mechanics' Bank of Buffalo, N. Y., a deed of the lumber standing or lying upon certain lands in the townships of Liberty and Norwich, McKean county, Pa., which embrace the lands upon which the bark peeled by said Duncan McRea was corded; excepting and reserving therefrom all the merchantable hemlock bark on said lands and all the rights of the United Lumber Company and A. C. Briggs, as set forth in said contract bearing date January 11, 1892.

On or about the 1st of November, 1893, the said Adelpha C. Briggs and her husband executed and delivered to said banks a deed conveying the said Boody lands; and by a separate instrument in writing bearing even date therewith the said Adelpha C. Briggs and her husband transferred to said banks all of their right, title and interest in and to all mill property, machinery, logs, lumber and bark, and other personal property on said lands.

The notes given by the plaintiff as aforesaid passed into the hands of *bona fide* holders, and the plaintiff was compelled to pay the same at maturity. Under the several transfers made to said banks as aforesaid, they took possession of the lands therein described and of all the bark on said lands. The plaintiff made several demands upon said banks for the bark which he claimed to own or have an interest in, and upon their refusal to deliver it to him he brought this action.

. The further facts, so far as they are material, will appear in the opinion.

*Adelbert Moot* for appellants. The contract between French and Briggs furnishes no legal reason why Lighthouse should have a judgment against the banks. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Kelly* v. *Roberts*, 40 N. Y. 432; *Turk* v. *Ridge*, 41 N. Y. 201; *K. L. Ins. Co.* v. *Nelson*, 78 N. Y. 137; *Southwick* v. *F. N. Bank*, 84 N. Y. 420; *People* v. *Dennison*, 84 N. Y. 272; *Dunning* v. *Leavitt*, 85 N. Y. 35; *Crowe* v. *Lewin*, 95 N. Y. 423; *Garnsey* v. *Rogers*, 47 N. Y. 242; *Vrooman* v. *Turner*, 69 N. Y. 285.) The equities of the banks are superior to those of Lighthouse. (Pom. Eq. Juris. § 1235.) The court erred in granting plaintiff judgment on a cause of action not alleged, and on the ground of fraud. (*Southwick* v. *F. N. Bank*, 84 N. Y. 420; *People* v. *Dennison*, 84 N. Y. 272; *K. L. Ins. Co.* v. *Nelson*, 78 N. Y. 137.) There is no ground for judgment for Lighthouse against the banks in this case. (*Shindler* v. *Houston*, 1 N. Y. 261; 2 Kent's Com. 492–496, 504.)

*Walter S. Hubbell* for respondent. The plaintiff was entitled to recover of the banks because the bark was transferred to the banks solely as collateral security for a pre-existing indebtedness, and nothing was advanced by the banks on the faith of the transfer. (*Macauley* v. *Smith*, 132 N. Y. 524; *Sargent* v. *E. S. A. Co.*, 46 Hun, 19.) The defendants, the banks, had notice of plaintiff's claim before the bark was delivered to them and, therefore, acquired no title as against it. (*Kimberly* v. *Patchin*, 19 N. Y. 330.) As Briggs retained possession of the bark until it was transferred to the banks and they took possession, Lighthouse and French got neither title, lien nor possession. (*Joyce* v. *Adams*, 8 N. Y. 291; *Anderson* v. *Read*, 106 N. Y. 333; *Blossom* v. *Shotter*, 59 Hun, 481; 128 N. Y. 679.)

Werner, J. The learned trial court found the facts substantially as above stated. Upon these facts it based the legal

conclusion, " that the transfer to the defendant banks, by the said John C. French and Adelpha C. Briggs, of the said bark upon the said Boody lands, peeled by said Duncan McRea under his contract with the United Lumber Company, was subject to whatever right the plaintiff acquired therein by the advance payment made by him upon the agreement to purchase 1,000 cords of bark of the Morrison Run Lumber Company, and the payment to Duncan McRea of $1,825 of the proceeds of the discount of the plaintiff's notes to apply on his contract for the peeling of said bark. And that, to the extent of the said sum of $1,825, such transfer was in fraud of the plaintiff's right so acquired, which was the right to compel the specific performance of the contract between the Morrison Run Lumber Company and the United Lumber Company to the amount advanced by the plaintiff and actually paid to said McRea."

" That the plaintiff is entitled to judgment against the defendant banks, the Third National and Farmers and Mechanics' Banks, setting aside the transfer so made to them of the bark, to the extent of the said sum of $1,825, paid by the Morrison Run Lumber Company to said McRea, and that the plaintiff have judgment against said banks for the sum of $1,825, part proceeds of the sale of said bark by them."

The Appellate Division unanimously affirmed the judgment entered upon the decision of the trial court, and we are, therefore, compelled to accept the facts as found.

This case presents a practical illustration of the difficulties with which courts are beset in the attempt to apply equitable principles to ill-considered and hastily-executed contracts. It would have been possible for the plaintiff to have made a contract under which the title to the bark bargained for passed at once. The identity of the subject-matter of the contract might have been so clearly fixed as to have left nothing to chance or doubt. If, in the nature of things, both of these precautions were impracticable, the plaintiff might still have exacted from French some security for the advances made upon the contract. As neither of these things were done, it

is our duty to ascertain whether the plaintiff, under the contract which was made, acquired any rights, either legal or equitable, which can be upheld under the judgment herein. In the pursuit of this inquiry we must take the contract between the plaintiff and the Morrison Run Lumber Company as it was made. The desire to reach a result which will accord with the apparent equities of the case will not permit us to clothe the contract with conditions and characteristics that are foreign to it. The trial court correctly decided that the contract was executory. There was no change of title at the time of its execution. This necessary conclusion is based upon the coincidence of absence of title in the vendor; and the lack of such identification and appropriation of the subject-matter of the contract, as is essential to the passage of title. The plaintiff's executory contract with the Morrison Run Lumber Company was subsidiary to an executory contract between the latter and the United Lumber Company. Neither the plaintiff nor his vendor could acquire title to any bark under either of said contracts until something was done by way of identification or appropriation that would render the amount of bark specified in the contracts capable of delivery. Under the finding of the trial court further discussion of this feature of the case is superfluous, and we have alluded to it simply to show that *Kimberly* v. *Patchin* (19 N. Y. 330), cited by respondent's counsel, and kindred cases, have no application to the case at bar.

If the plaintiff, by virtue of his contract with the Morrison Run Lumber Company, did not take title to the bark therein described, what interest did he acquire therein? The learned trial court seems to have proceeded upon the theory that the plaintiff, by virtue of his contract with the Morrison Run Lumber Company, became vested with the right to a specific enforcement, for his benefit, of the contract between the latter company and the United Lumber Company. By way of preface to what we shall have to say upon this subject, we may assume, although we do not decide, that this is a case in which the discretion of the trial court might have

been properly exercised in decreeing specific performance if, upon the facts established, the Morrison Run Lumber Company could have enforced specific performance of its contract with the United Lumber Company. This assumption is predicated upon the rules laid down in *Johnson* v. *Brooks* (93 N. Y. 337); *Williams* v. *Montgomery* (148 N. Y. 519), and *Matter of Argus Co.* (138 N. Y. 557), to the effect that in general a court of equity will not take upon itself to make such a decree, where chattel property alone is concerned, although its jurisdiction to do so is no longer to be doubted, and it is believed that no good reason exists against its exercise in any case when compensation in damages would not furnish a complete and satisfactory remedy. But could the Morrison Run Lumber Company have enforced specific performance against the United Lumber Company? Clearly not. The contract between these two companies was hardly more specific in its designation and appropriation of the subject-matter than the contract between the plaintiff and the Morrison Run Lumber Company. Under the plaintiff's contract any 1,000 cords of good merchantable bark would have satisfied the specifications. Under the other contract the bark was to be of that year's peeling on the jobs of Duncan McRea. In the absence of any finding we may assume that McRea's jobs were confined to the Boody lands. But upon those lands there were five hundred piles of bark containing in the neighborhood of two thousand cords of bark. A. Healey & Sons were first entitled to one-fourth of the same, and then out of the balance, which we may also assume amounted to about fifteen hundred cords, the United Lumber Company had agreed to sell to the Morrison Run Lumber Company one thousand cords, to be delivered to the plaintiff. Could the Morrison Run Lumber Company have insisted upon the delivery to Lighthouse of any specific one thousand cords of that bark? We think not. Any one thousand cords of bark taken from the large amount upon those lands would have satisfied the terms of the contract. The only substitute for a manual delivery of a parcel of personal property mixed with an ascertained and defined larger

quantity consists of such an identification of the same that the purchaser can take it. (*Stephens* v. *Santee*, 49 N. Y. 35; *Riendeau* v. *Bullock*, 48 N. Y. S. R. 876; *Foot* v. *Marsh*, 51 N. Y. 288; *Bacon* v. *Gilman*, 57 N. Y. 656, and *Kein* v. *Tupper*, 52 N. Y. 550.) There was here no such identification of the property as would have enabled the Morrison Run Lumber Company to take it. There was, there- fore, no sale, and there could be no specific performance so long as this essential requisite of the contract remained unper- formed. But it seems to have been assumed by the learned trial court that the plaintiff was clothed with certain equities which were superior to those possessed by his vendor. What had he done that had been omitted by his vendor? The answer is that the Morrison Run Lumber Company used $1,825.00 of the proceeds of his notes to pay for the "peel- ing" charges upon said bark. It will be observed that this circumstance could have no possible influence upon the ques- tions whether title passed or specific performance could be enforced. If such payment had been made pursuant to an agreement, either express or implied, between all parties inter- ested in, and to be affected by, the transaction, it might have created an equitable lien in favor of the plaintiff. But in the absence of a sufficient identification or appropriation of any specific 1,000 cords of bark, such a lien would have attached to all the bark on said lands, and not simply to a part thereof. It is not claimed that there was any such agreement.

We must, therefore, look for plaintiff's superior equities in another direction. The decision seems to imply that by such application of a part of the moneys produced by plaintiff's notes, the plaintiff acquired an equitable lien upon said 1,000 cords of bark. But here we meet the same obstacle, which stands in the way of a completed sale or specific performance. One of the first essentials to the creation of an equitable lien is the specific thing or property to which it is to attach. "Though possession is not necessary to the existence of an equitable lien, it is necessary that the property or funds upon which the lien is claimed should be distinctly traced, so that

the very thing which is subject to the special charge may be proceeded against in an equitable action and sold under decree to satisfy the charge." (Jones·on Liens, sec. 34, and *Grinnell v. Suydam*, 3 Sandford, 132.)

The difficulties referred to, which prevent an affirmance of the judgment herein, all arise upon the assumption that there is some legal or equitable connection between the contracts under consideration. But when they are viewed from the true perspective there are other circumstances than those adverted to, which are inconsistent with the existence of an equitable lien in favor of the plaintiff. His contract was with the Morrison Run Lumber Company. The bark he was entitled to receive under it might have been produced from other places than the "Jobs of·Duncan McRea." The assumption of the Morrison Run Lumber Company to pay McRea's "peeling" charges was part of another contract in which the plaintiff had no interest, and the use of a part of the proceeds of his notes to pay such charges was without his knowledge or direction.

There was no express agreement for such a lien, and the circumstances were not such as to create one by implication. Upon the facts before us it is precisely as though the Morrison Run Lumber Company had used other moneys to pay the charges of McRea. In this connection it is to be remembered that the thing upon which the plaintiff's claim to a lien is predicated is chattel property, and not a fund which is incapable of actual delivery. The distinction to be observed is well stated in *Clemson* v. *Davidson* (5 Binn. [Pa.] 392): "Any order, writing or act which makes an appropriation of a fund, amounts to an equitable assignment of that fund. The reason is plain; the fund being neither assignable at law nor capable of manual possession, an appropriation of it is all that the nature of the case admits. A court of equity will, therefore, protect such appropriation, and consider it equal to an assignment. But very different is the case of a parcel of flour, which admits of actual delivery. Every man who purchases an interest in property of this kind ought to take immediate possession; if he does not, he is guilty of negligence and can

have no equity against a third person who contracts with the actual possessor without notice of a prior right."

The learned counsel for the respondent dwells with considerable emphasis upon the fact that the sole consideration for the transfers to the banks was an antecedent indebtedness. If the plaintiff had neither title to nor lien upon the bark transferred to the banks, the former and the latter stood upon an equal footing. Both were mere creditors at large of the two lumber companies, and a transfer to either for an existing indebtedness would be good as against the other. As stated in *Seymour* v. *Wilson* (19 N. Y. 417): "When the equities are equal the legal title must prevail." The transfer of the bark to the banks was simply the preference of one creditor over another. (*Murphy* v. *Briggs*, 89 N. Y. 446.) We have discussed at length every possible phase of this case in the hope that some suggestion would arise which would enable us to render a decision in accordance with the apparent equities of the case; but an analysis of the facts in the light of controlling principles has convinced us that these equities are more apparent than real.

This is simply a case where the confidence of one of the parties to a contract has been abused by the other. Instead of transferring to the plaintiff at least enough of this bark to reimburse him for the advancements made upon his contract, the defendant French conveys all his interest in the bark to another creditor. Similar transactions are constantly taking place in the commercial world, and they create only the ordinary relation of creditor and debtor — nothing more.

As it is possible that a more minute inquiry into the facts upon another trial may show a different legal status; and as in any event, the plaintiff is entitled to judgment against the defendant French, who is really the Morrison Lumber Company, the judgment of the court below should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, HAIGHT, LANDON and CULLEN, JJ., concur; O'BRIEN, J., dissents.

Judgment reversed, etc.