MAX POTTASH and HARRY POTTASH, Doing Business as POTTASH BROTHERS, Respondents, Appellants, *v.* THE CLEVELAND-AKRON BAG COMPANY, Appellant, Respondent.

First Department, July 1, 1921.

Sales — foreign corporation — when contract executed in this State — action to recover purchase price — goods shipped to plaintiffs on bill of lading to order of owner — title did not pass where plaintiffs, without consent of owner, secured possession of bill of lading without paying draft — giving defendant delivery order on forwarding agent did not constitute delivery where order did not specify particular goods — delivery to carrier not delivery to buyer where bill of lading issued to seller — title did not pass where bill of lading issued to seller's order and transferred to bank on payment of draft — remedy of seller, if any, is action for non-acceptance.

In an action by a non-resident against a foreign corporation to recover the purchase price of goods, the contract will be deemed, for jurisdictional purposes, to have been made in New York where it is shown that the purchase and sale of the goods mentioned was negotiated by brokers in the city of New York and that the bought and sold notes were sent to the respective parties and by them confirmed and returned to the brokers and by them exchanged in the city of New York.

In an action to recover the purchase price of thirty-three bales of burlap, net cash, ex dock Pacific coast, the title to which was not in the plaintiffs at the time the order was taken, it appeared that on the arrival of the goods defendant requested that they be shipped to a third person and the goods were so shipped; that the bill of lading for the goods was made out to the order of the owner and that a draft attached was forwarded to the residence of the plaintiffs for collection; that the plaintiffs did not pay the draft but, without the consent of the owner, caused the bill of lading to be detached from the draft and then drew their own draft on the defendant and attached the bill of lading to it; that the defendant

refused to pay the draft; that the bill of lading was returned to the owner who subsequently sold the goods and retained the proceeds.

*Held,* that the unauthorized separation of the bill of lading from the draft of the owner did not give the plaintiffs title to the goods and, therefore, never having had title, they could not pass title to the defendant, and the court properly directed a verdict for the defendant on this cause of action.

On the second cause of action for the purchase price of one hundred bales of burlap, net cash, ex dock Pacific coast, it appeared that the plaintiffs purchased the goods from a third person; that said third person gave to plaintiffs a delivery order on their custom house broker and forwarding agent; that plaintiffs indorsed this order over to the defendant, attached a draft for the purchase price, and forwarded it through a bank; that the delivery order did not identify any particular bales by marks or numbers to distinguish them from other bales which had been received on the same steamship; that the defendant insisted upon some tangible evidence that the particular goods had arrived and were the property of the plaintiffs; that the goods were finally shipped on bill of lading to the order of the plaintiffs; that on receipt of the bill of lading by the plaintiffs they indorsed it in blank, attached a draft upon the defendant for the purchase price and delivered the draft to a bank, receiving the amount thereof from the bank; that the bank forwarded the draft with the bill of lading attached and was subsequently notified that payment of the draft had been refused.

*Held,* that the delivery order on the custom house broker was not sufficient to constitute a good delivery under the contract inasmuch as the particular bales were not identified by it; that the act of the plaintiffs in indorsing the bill of lading to the bank and receiving from the bank the purchase price had the effect of vesting the title to the goods in the bank.

Had the goods been delivered to the carrier and a straight bill of lading received or a bill of lading to the order of the buyer, then delivery to the carrier would have been delivery to the buyer, but the goods were consigned to the seller and the bill issued to the seller's order, and, therefore, title or right to possession did not pass to the buyer but remained in the seller.

The act of the plaintiffs in presenting the bill of lading with the draft attached through their bank constituted a good tender of performance and under the common law would have enabled the plaintiffs to maintain an action for the purchase price, but under section 144 of the Personal Property Law, an action for the price can be brought only where the property in the goods has passed to the buyer, except where they cannot readily be resold for a reasonable price, and in such a case the seller must notify the buyer that the goods are thereafter held by the seller as bailee for the buyer; the instant case does not come within the exception.

The plaintiffs' right of action, if any, is for damages for non-acceptance of the goods.

APPEAL by the plaintiffs, Max Pottash and another, from so much of a judgment of the Supreme Court, entered in the

office of the clerk of the county of New York on the 29th day of June, 1920, and from so much of an order, entered in said clerk's office on the 8th day of July, 1920, amending said judgment, as confirms the verdict of a jury rendered by direction of the court in favor of the defendant on the first cause of action, and also from so much of an order, entered in said clerk's office on the 28th day of June, 1920, as denies plaintiffs' motion to set aside the verdict and for a new trial on the first cause of action made upon the minutes.

Appeal by the defendant, The Cleveland-Akron Bag Company, from said judgment, and also from so much of said order, entered on the 28th day of June, 1920, as denies defendant's motion to set aside the verdict and for a new trial on the second cause of action made upon the minutes.

*Lawrence E. Brown* of counsel [*Emilie M. Bullowa* with him on the brief; *Bullowa & Bullowa,* attorneys], for the plaintiffs.

*Clifton P. Williamson* of counsel [*James A. Stevenson, Jr.,* with him on the brief; *Alexander & Green,* attorneys], for the defendant.

PAGE, J.:

The first defense to each of the two causes of action alleged in the complaint was that the court did not have jurisdiction because the defendant was a foreign corporation, organized and existing under the laws of the State of Ohio, and was not at the times mentioned in the complaint, or at the time of the commencement of the action, doing business in the State of New York; and the plaintiffs were residents of Philadelphia in the State of Pennsylvania; and the agreement referred to in the complaint was not made and by its terms was not to be performed within the State of New York.

A separate trial of these issues was ordered and upon the trial thereof the justice presiding submitted to the jury the following questions and directed the following answers to be given:

" 1. Were the contracts in suit made within the City of New York or elsewhere?

" Answer. In the City of New York.

" 2. Was the defendant doing business in the City of New York at the time of the commencement of this action?

" Answer.   No."

The proof was that the purchase and sale of the goods mentioned was negotiated by brokers in the city of New York and that the bought and sold notes were sent to the respective parties and by them confirmed and returned to the brokers and by them exchanged in the city of New York. The contracts were, therefore, made in the city of New York, and the verdict was properly directed.

The remaining issues then came on for trial.  The first cause of action was for the purchase price of thirty-three bales of burlap at twenty-two cents per yard, net cash, ex dock Pacific coast, arriving on the steamship *Kangaroo.*  It was proved that the defendant was notified of the arrival of the goods and requested that they be shipped to the Chicago-Detroit Bag Company at Goshen, Ind., and the goods were so shipped on September 23, 1918.  The goods did not belong to the plaintiffs but to Herman Reach & Co., Inc.  The goods were shipped by the latter and the bill of lading therefor was made out to the order of Herman Reach & Co., Inc.  On September thirtieth this bill of lading was received by Herman Reach & Co., Inc., in New York city, and on the same day a draft was drawn on the plaintiffs by Herman Reach & Co., Inc., attached to the bill of lading, and forwarded to Philadelphia for collection.  On October second the draft with the bill of lading attached was presented to the plaintiffs in Philadelphia.  The draft was not paid.  The plaintiffs, however, without the knowledge or consent of Herman Reach & Co., Inc., caused the bill of lading to be detached from the draft and then drew their own draft on the defendant and attached the bill of lading to it.  The defendant refused to pay this draft and returned it.  On October fourteenth the bill of lading was returned to Herman Reach & Co., Inc., their draft on the plaintiffs not having been paid.  On this same date the goods arrived at Goshen, Ind., but were not accepted; and subsequently Herman Reach & Co., Inc., sold the thirty-three bales to the Central Bag Manufacturing Company of Chicago and retained the proceeds.

The plaintiffs never had title to the goods and could not

pass title to the defendant. The unauthorized separation of the bill of lading from the draft of Herman Reach & Co., Inc., did not give the plaintiffs title. It was a tortious conversion of the bill of lading. (*Bank of Rochester* v. *Jones,* 4 N. Y. 497, 501.) In order to maintain an action for the price the seller must prove that the title passed to the buyer. (Sales of Goods Act, Pers. Prop. Law, § 144, as added by Laws of 1911, chap. 571; *Miller* v. *Ungerer & Co., No. 1,* 188 App. Div. 655, 660.) The plaintiffs clearly had no title to the goods that they could pass. The court correctly directed a verdict for the defendant on this cause of action.

The second cause of action was for the purchase price of 100 bales of burlap at twenty-two cents per yard net cash, ex dock Pacific coast, May and/or June shipment from Calcutta. The goods arrived at Seattle, Wash., on board the steamship *Shimbo Maru* on August 28, 1918. The 100 bales had been the subject of several successive contracts of sale which led to delay, and the case was further complicated by a departure from the terms of the contract with resultant voluminous correspondence. The salient facts of the case follow. The plaintiffs had agreed to purchase these 100 bales from Frame, Leaycraft & Co., who insisted upon payment of cash before they would give a delivery order for the goods to the plaintiffs. This matter was adjusted and Frame, Leaycraft & Co. gave to plaintiffs a delivery order on George S. Bush & Co., Inc., their custom house broker and forwarding agent at Seattle. Plaintiffs indorsed this order over to the defendant, attached a draft for the purchase price, and forwarded it through a bank. This delivery order did not identify any particular bales by marks or numbers to distinguish them from other bales which had been received on the steamship *Shimbo Maru.* The defendant insisted upon some tangible evidence that the particular goods had arrived and were the property of the plaintiffs. As a result of the correspondence between the various parties, Frame, Leaycraft & Co. by telegraph instructed George S. Bush & Co., Inc., to ship the goods. In accordance with these instructions the goods were shipped on September 20, 1918, over the Northern Pacific railway and a bill of lading issued to the order of plaintiffs at Cleveland, notify Cleveland-Akron Bag

Company. This bill of lading was forwarded to the plaintiffs at Philadelphia. Upon receipt thereof the plaintiffs indorsed the bill of lading in blank and attached it to a draft upon the defendant for $44,000, the purchase price, and delivered the draft to the National Security Bank of Philadelphia, which paid to plaintiff $44,000 on October 8, 1918. On October twelfth the plaintiffs wrote to the defendant: · " As regards to the 100 bales from the S/S *Shimbo Maru,* we have already collected for same, namely $44,000 from the bank and they will no doubt demand payment upon you for we have nothing further to say on this particular lot." The National Security Bank forwarded the draft with the bill of lading attached to the First National Bank of Cleveland, and was subsequently notified that payment of the draft had been refused. This action was commenced on October twenty-second by attachment.

On the trial the plaintiffs presented two theories of their delivery of the goods by each of two methods of constructive delivery: (1) By giving to the defendant the delivery order; (2) by presenting to the defendant a draft for the purchase price to which was attached a bill of lading showing shipment of the goods to the order of the plaintiffs; and they have argued each of these theories upon this appeal.

As to the first very little need be said. Undoubtedly, if the plaintiffs had delivered to the defendant a sufficient order on the persons having custody of the goods so that on presentation thereof at the dock in Seattle it would have been entitled to the immediate possession of the 100 bales, that would have been a good delivery under the contract, the property in the goods would have passed to the defendant, and the plaintiff could have maintained an action for the price. It was testified by the plaintiffs' expert that to make a delivery order good according to the custom of the trade, the particular bales would have to be specified and distinguished by numbers or marks, and the mere fact that it said on a certain ship would not be sufficient. The plaintiffs' subsequent dealings with the goods entirely negatived the claim that with the delivery of this order title to the goods passed to the defendant. The shipment of the goods to order of the plaintiffs was inconsistent with title in the defendant. Although this may have been an error on the part of George

S. Bush & Co., Inc., nevertheless plaintiff took advantage of the situation, delivered the order bill of lading indorsed in blank to the bank and received the purchase price from it, thereby vesting it with title to the goods, which the plaintiffs could not have done unless they had title. These subsequent acts show that the plaintiffs knew that they had not parted with title by giving to the defendant the delivery order.

*Second.* It may be assumed from the correspondence of the parties that the contract was modified from a delivery " ex dock " to a delivery " f. o. b. Seattle." No claim is made by either party that the plaintiffs were to pay the freight from Seattle to Cleveland. Had the goods been delivered to the carrier and a straight bill of lading received or a bill of lading to the order of the buyer, then the delivery to the carrier would have been a delivery to the buyer. But where, as in this case, the goods are consigned to the seller, and the bill is issued to the seller's order, title or right to possession does not pass to the buyer but remains in the seller. (Pers. Prop. Law, § 101, subd. 2, as added by Laws of 1911, chap. 571; *Boss* v. *Hutchinson,* 182 App. Div. 88, 90.) The rule was the same prior to adoption of the " Sales of Goods Act." (*Farmers & Mechanics' Nat. Bank* v. *Logan,* 74 N. Y. 568, 578.) The plaintiffs cannot claim that their property " shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract " (Pers. Prop. Law, § 101, subd. 2, *supra*), because they exercised the right of disposition, and transferred the title and right of possession to the bank and notified the defendant that " we have nothing further to say on this particular lot." Therefore, title did not pass at all to the defendant. The bill of lading was tendered with a draft attached. The title was then in the bank and would not pass to the defendant except on payment of the draft. (*Commercial Bank of Keokuk* v. *Pfeiffer,* 108 N. Y. 242, 250; Bills of Lading Act, Pers. Prop. Law, §§ 214, 215, 218, as added by Laws of 1911, chap. 248.) This was a good tender of performance and under the common law of this State would have enabled the seller to maintain an action against the buyer for the unpaid purchase price. It is upon cases

decided before the passage of the Sales of Goods Act that the plaintiffs' counsel relies. Under section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571) an action for the price can be brought only where the property in the goods has passed to the buyer, except where they cannot readily be resold for a reasonable price, but in such a case the seller must notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. The instant case does not come within the exception. The plaintiffs' right of action, if any, is for damages for non-acceptance of the goods. (Pers. Prop. Law, § 145, as added by Laws of 1911, chap. 571.)

At the close of the case both parties moved for the direction of a verdict. The court directed a verdict for the defendant on the first cause of action. This was a correct disposition and leads to an affirmance with costs on the plaintiffs' appeal. The court directed a verdict for the plaintiffs on the second cause of action. This was erroneous. On the defendant's appeal the judgment as to the second cause of action will be reversed, with costs, and judgment ordered for the defendant, with costs.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Judgment so far as appealed from by plaintiffs affirmed, with costs; so far as appealed from by defendant reversed, with costs, and judgment ordered for defendant, with costs. Settle order on notice.