SMILEY STEEL COMPANY, INC., Respondent, v. LUCIEN SCHMOLL and Others, Appellants.

First Department, April 7, 1922.

Sales — action to recover purchase price — correspondence which left order by defendants subject to confirmation by plaintiff did not constitute contract — pleadings — bill of particulars limited proof by plaintiff to contract in writing based on specified correspondence — if contract had been shown action for purchase price was not maintainable as title had not passed and plaintiff did not bring itself within Personal Property Law, § 144, subds. 2, 3 — plaintiff never having had title could not pass title to defendants — property did not pass as goods were not delivered at point stated in alleged contract.

A contract for the sale of barb wire by the plaintiff to the defendants was not shown, where it appeared that the defendants by letter ordered certain barb wire to be selected from lots that had been inspected by defendants' agent; that after the exchange of several letters between the parties relating to the terms of the sale, the defendants wrote to the plaintiff stating that they noted that the seller, a third person from whom plaintiff was buying, had accepted the order provided the release of the United States government was forthcoming, and that plaintiff " expected to be able to close the transaction within a day or two," adding, " we shall accordingly await your final confirmation by Monday," and there was no proof whatever by the plaintiff showing any confirmation on its part of said order on " Monday " or at any other time.

The plaintiff was limited by its bill of particulars, not only in its specification that the contract was in writing, but that the letters in question constituted the written contract upon which the action was based.

Assuming, however, that a contract was shown, the plaintiff in suing for the purchase price of the wire has mistaken its remedy, for it was not shown that the property in the goods had passed to the buyer, and the plaintiff did not bring itself within subdivisions 2 and 3 of section 144 of the Personal Property Law by proving that the price was payable on a day certain or that the goods were not readily resalable at a reasonable price or that the plaintiff had notified the defendants that the goods would be held by the seller as bailee for the buyer.

Furthermore, it appeared that the plaintiff never had title to the goods as its order, placed with the New York Central Railroad Company for the goods, was never accepted by the railroad company nor was possession ever given to the plaintiff, and not having had title at any time it could not pass title to the defendants.

Under the alleged contract sued upon, delivery was required to be made at a certain point in New York city and as it clearly appears that the wire was not delivered at the point designated, under rule 5 of section 100 of the Personal Property Law the title did not pass to the defendants.

APPEAL by the defendants, Lucien Schmoll and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the same day denying defendants' motion for a new trial made upon the minutes.

*Alfred B. Nathan* of counsel, for the appellants.

*Bouvier & Beale* [*B. F. Norris* of counsel], for the respondent.

Merrell, J.:

The action was brought to recover the sum for which the verdict was directed as the purchase price of 52,000 pounds of " 4-point 3.12 gauge " galvanized barb wire, which the plaintiff alleges it agreed to sell and deliver to the defendants and the defendants agreed to purchase and accept from the plaintiff and to pay plaintiff therefor the sum of five dollars and ten cents per 100 pounds, delivery to be f. a. s. Ward Line Dock, New York.

The defendants, upon the trial and upon this appeal, took issue with the plaintiff, *first*, as to whether any valid, binding contract was entered into between the parties; and, *second*, that, even assuming the parties had contracted as claimed by the plaintiff, the plaintiff was not entitled to recover of the defendants the purchase price of said barb wire.

In its amended complaint the plaintiff alleges that the defendants had inspected the barb wire prior to the making of the contract of sale; and that, although the plaintiff had tendered delivery to defendants of said wire, the defendants refused to accept the same; and that the wire was, at the time the action was begun, located on the docks of the New York Central and Hudson River Railroad Company, at Hoboken, N. J.

Pursuant to defendants' demand, the plaintiff served a bill of particulars, in which it claimed that the agreement between the parties was in writing, and consisted of five different letters, copies of which were attached to the bill of particulars. The bill of particulars further states that the plaintiff had an agreement with the New York Central Railroad Company for the purchase of said wire, and that the same was under plaintiff's control at all times. In the pleadings and bill of particulars no claim was made by the plaintiff that it ever had the title to said barb wire, and it was expressly admitted upon the trial that the plaintiff had never had possession of said wire. Thus, it is the contention of the defendants, appellants, *first*, that no contract was ever entered into between the parties; and, *second*, that the plaintiff never had any wire which it could deliver to the defendants.

The first of the five letters, which the plaintiff specified in its bill of particulars constituted the contract between the parties, was written October 4, 1918, by the defendants to the plaintiff in reference to the purchase of the barb wire in question, " to be selected out of the lots that were inspected by our Mr. Wodiska on October 3, 1918, at Weehawken, N. J." Defendants' said letter then states:

"We further agree that payment shall be made immediately upon receipt of the Ward Line's official dock receipt.

"The above purchase is subject to your confirmation to be delivered at this office not later than October 7, 1918."

On October 7, 1918, the second of said five letters was written, and was from the plaintiff to the defendants, acknowledging receipt of the "order" for the 52,000 pounds of barb wire. In said last-mentioned letter plaintiff stated:

"We have entered your order with the supplier, as per your terms — that is — to be selected out of the lots that were inspected by you on October 3 at Weehawken.

"In closing this matter up with the supplier, we did not mention 'to be selected out of the lots' but are making it part of the terms of our order. It is possible that they might take exception to it, although they agreed to accept our order for the mentioned tonnage they tried to make it conditional upon our taking the entire lot as it stands on the piers. However, we finally succeeded in having them accept the order for 52,000 #.  *  *  *.

"It will probably be a matter of three or four days before we receive final confirmation and acceptance of order due to the fact that the material must be released from bond and for the surrendering of the bill of lading.

"We will advise you promptly as to the ultimate outcome, as soon as the supplier has confirmed the transaction to us in writing."

The evidence upon the trial was that the "supplier" referred to in the correspondence was the New York Central and Hudson River Railroad Company.

On October 8, 1918, the defendants acknowledged receipt of the plaintiff's letter of October 7, 1918, and wrote the plaintiff that they noted that the plaintiff's supplier was expected to give a final confirmation and acceptance in three or four days, and then added: "We are not in a position to keep this order open indefinitely, and we will therefore give you until Friday, 6 P. M. to furnish us with a final confirmation and acceptance of the order." It was stipulated upon the trial that this last-mentioned letter was written by defendants October 8, 1918, which was on Tuesday, and that the Friday therein mentioned was on October 11, 1918.

On October 10, 1918, plaintiff's Exhibit 4 was written, and therein the plaintiff wrote to the defendants, stating that it had received a letter from its principal that morning in response to its order for approximately 52,000 pounds of barb wire, and added: "They advise that they will sell us this tonnage provided they

42

are able to have the wire released to us by the United States authorities. They agree to lighter the wire to the Ward Line Dock, New York City, without charge to us, provided we give the lighterage people regular order for such delivery accompanied by any permit which may be necessary. It is also understood that any remarking or other conditioning of the wire incident to reshipment is to be for your account and your expense."

Plaintiff's letter to defendants, of October tenth, also contained the following:

" According to the shipper's invoice, it covers Galvanized Barb Wire, twelve gauge, four point three but we are selling you this wire ' as is ' and do not guarantee these specifications, but as you have seen it, and as a result have issued your purchase order, there should be no difficulty on this point.

" It is understood that you are to take the wire as it comes from the piles. You may select the wire on either pier and take that entire lot up to 52,000 #, and if there is less than that quantity you may then take enough wire from the piles stored on the other pier to complete the lot, but you are to start on either end of the pile that you may select and take the wire that comes. In other words — we do not want you to sort all of this wire reel by reel for the purpose of obtaining the best wire in the lot.

" We have written for certified copy of consular invoice, and the original bill of lading for this shipment, and anticipate that we will be able to close this transaction within the next day or two."

On October 11, 1918, the day following plaintiff's letter of October tenth, the defendants wrote to plaintiff that they noted that the seller had accepted the order, providing the release of the United States government was forthcoming; and that the plaintiff expected to be able to close the transaction within a day or two. Defendants' letter then added: " We shall accordingly await your final confirmation by Monday." The following Monday was October fourteenth, and the evidence does not disclose any further transactions between the parties with reference to the sale of said wire, or the closing of the contract between them.

In its bill of particulars and upon the trial the plaintiff claimed and the court held that the five letters mentioned were sufficient to constitute a written contract between the parties. It is difficult to understand how it can be said that the minds of the parties finally met, when, in the last of the five letters, it was stated that the defendants would await the final confirmation of their order on the following Monday. No proof was offered by the plaintiff showing any confirmation on its part of said purchase on the following Monday, October fourteenth, or at any other time. On

plaintiff's own version it was necessary to obtain from the United States government a release of the wire in question, and it nowhere appears that such release was ever obtained. The most that can be said was that up to October 11, 1918, the defendants had furnished an order for the wire in question, subject to confirmation by the plaintiff. Nowhere in these letters, which the plaintiff specifies constituted the written contract between the parties, is found any obligation on the part of the plaintiff to deliver said wire. At no time could the defendants have insisted upon such delivery under the contract, as claimed by the plaintiff. There is no justification for any claim that the written contract embraced in said five letters was in any way amplified by any subsequent oral agreement.

The law is well settled that the plaintiff was limited by its bill of particulars, not only in its specification that the contract was in writing, but that the five letters in question constituted the written contract. The office of a bill of particulars is to advise the defendant of the items which the plaintiff intends to establish upon the trial, and to restrict plaintiff's proof to the matters specified. (*Matthews* v. *Hubbard*, 47 N. Y. 428.) In the latter case the Court of Appeals said: " The bill of particulars certainly need not state more than the plaintiff is bound to prove. It restricts the plaintiff to proof of remittances made at the defendants' request. If the plaintiff should seek to prove a liability for the items in question, resulting from the application of the money by the New Orleans firm, and not from the defendants' request to remit to that firm, the proof would not be within the specifications, and would, therefore, be inadmissible under them."

The final letter from the defendants to the plaintiff, on October 11, 1918, left open the entire matter. In *Mahar* v. *Compton* (18 App. Div. 536) the court said (at p. 540): " It is well settled, however, that in order to establish a legal contract through the medium of correspondence, it must be made to appear that there was not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract, and if the precise thing offered was not accepted; or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer." (See, also, *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310.)

The correspondence between these parties discloses that the terms of the original purchase were changed from time to time, as to the way in which the wire was to be selected by the defendants, the necessity of having the wire released from bond, the surrendering of the bill of lading, etc. Even though the stricture upon the plaintiff, requiring its proofs to conform to its bill of particulars, be removed, there was no evidence whatever, either by written communication or by word of mouth, that there was any final confirmation of the order as required in defendants' final letter of October eleventh. I am, therefore, of the opinion that the plaintiff failed to prove any valid, binding contract by which it could charge the defendants.

Assuming, however, that a contract was proven upon the trial, the plaintiff has, I think, mistaken its remedy and cannot, under the circumstances, sue the defendants for the purchase price of said wire. Unquestionably, plaintiff's action is brought to recover such purchase price. In the 9th paragraph of the amended complaint the plaintiff alleges: " That plaintiff has duly demanded from the defendants the sum of $2,652, the agreed price and value of the aforesaid wire, and the defendants have refused to pay the same." Wherefore, the plaintiff demanded judgment against the defendants for the said sum, with interest. A mere computation of the quantity sold at the price alleged in the amended complaint shows that the sum for which the plaintiff demanded judgment represented the purchase price of the barb wire. In plaintiff's bill of particulars plaintiff refers to " the name of the person who inspected the material, the price of which is the subject matter of this action   *   *   *."

The only warrant for an action for the purchase price is found in the provisions of section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571). Subdivision 1 of that section provides as follows:

" 1. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods."

The 2d subdivision of section 144 refers to a situation where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and where the buyer wrongfully neglects or refuses to pay the purchase price, the seller may maintain an action for such price. The 3d subdivision of section 144 permits a seller to maintain an action for the price, although the property in the goods had not passed, if

they could not be readily resold for a reasonable price; and if the provisions of section 145 (as added by Laws of 1911, chap. 571) are not applicable, the seller may offer to deliver the goods to the buyer; and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer.

The plaintiff made no attempt upon the trial to bring itself within either of the last two mentioned subdivisions of section 144 of the Personal Property Law. There was no proof that the price was payable on a day certain, nor that the goods were not readily resalable for a reasonable price, nor that the plaintiff had notified the defendants that the goods would be held by the seller as bailee for the buyer. The only possible justification for plaintiff's action would be that the title to the goods in question had passed to the defendants under the alleged contract between the parties. The first objection to such a claim is that the evidence does not disclose that the plaintiff was ever the owner of said wire, or in a position to deliver the same. Nowhere in the amended complaint is there any allegation that the plaintiff at any time owned the barb wire, and in plaintiff's bill of particulars it is only claimed that plaintiff had entered into an agreement with the New York Central Railroad Company for the purchase thereof. Upon the trial plaintiff's secretary and treasurer first testified that the plaintiff purchased the wire from the New York Central Railroad Company, and in proof thereof the plaintiff introduced in evidence a written order, dated October 7, 1918, requesting the New York Central Railroad Company to furnish the plaintiff with 52,000 pounds " four point three — twelve gauge " galvanized barb wire, " material to be weighed and to be selected from the material inspected by us at Weehawken, N. J., on October 3, 1918." This letter or order closed as follows:

" Kindly acknowledge receipt of this order,
" SMILEY STEEL COMPANY, INC.
" By . . . . . . . . . . . . . . . . . . . . . . . "

It will thus be seen that this " order " requested an acknowledgment by the New York Central Railroad Company thereof, but the evidence does not disclose that the New York Central Railroad Company ever acknowledged receipt thereof or accepted said order, nor does it appear that the " order " aforesaid ever became a binding agreement with the latter company for the purchase of said wire. Upon cross-examination, plaintiff's secretary and treasurer admitted that the plaintiff had never paid the railroad company for the wire, had never taken possession of it, and the witness was ignorant as to who insured the wire. This witness

was asked: " Q. Did you take it into your possession? A. Had no place to put it. They let us keep it over at the warehouse. Q. Did you take it into your possession? A. We were ready at all times to make delivery of it, even today." Counsel for the defendants moved to strike out this last testimony, and it was stricken out, the court asking: " What do you mean by ' took it into possession? ' " To which plaintiff's secretary and treasurer replied: " It is convenient to have this barbed wire where it is. We could not put it in our office down here and if we took possession of it it would cost us storage charges. I could not see any advantage in not letting it lay where it is. There is no storage charge or anything of that kind. Q. You mean it lay on the dock of the New York Central? A. Yes, in a protected warehouse. Q. Did it lay on the dock there in your name or in the name of the New York Central? A. I cannot tell you that. We gave them our purchase order I assume in our name. Q. Did you insure it or did the New York Central, if you know? A. I don't know." Later on plaintiff's said secretary and treasurer was asked: " Q. Was a storage charge made against you by the New York Central for the storage of the wire? A. No, not to my knowledge." It also appeared that the wire, prior to these transactions between the parties, had remained on the railroad company's docks for approximately two years.

Under such circumstances it can hardly be said that the wire in question was ever owned by the plaintiff or in its possession, and certainly the property in the goods never passed to the defendants. Such a passing of title was a prerequisite to the maintenance by the plaintiff of an action for the price of the goods. (Pers. Prop. Law, § 144, subd. 1; *Pottash* v. *Cleveland-Akron Bag Co.,* 197 App. Div. 763.) In the latter case Mr. Justice Page, writing for this court, said: " The plaintiffs never had title to the goods and could not pass title to the defendant. The unauthorized separation of the bill of lading from the draft of Herman Reach & Co., Inc., did not give the plaintiffs title. It was a tortious conversion of the bill of lading. (*Bank of Rochester* v. *Jones,* 4 N. Y. 497, 501.) In order to maintain an action for the price the seller must prove that the title passed to the buyer. (Sales of Goods Act, Pers. Prop. Law, § 144, as added by Laws of 1911, chap. 571; *Miller* v. *Ungerer & Co., No. 1,* 188 App. Div. 655, 660.) The plaintiffs clearly had no title to the goods that they could pass. The court correctly directed a verdict for the defendant on this cause of action."

Furthermore, attention may be called to the fact that, under the alleged contract sued upon, delivery was required to be made

free alongside of the Ward Line Dock, New York. In the amended complaint it is stated and the evidence shows that the wire, at the time the action was brought, was located on the dock of the New York Central and Hudson River Railroad Company at Hoboken, N. J. Therefore, it could not be claimed by plaintiff that it ever delivered the wire at the place agreed upon.

Rule 5 of section 100 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides: " If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Where the contract calls for delivery by plaintiff at a certain place, no title passes unless and until such delivery is made. (*Westmoreland Coal Co.* v. *Syracuse Lighting Co.,* 159 App. Div. 323, 326; *Shultz & Co., Inc.,* v. *De Nood,* 194 id. 149.)

Section 98 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides that " Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained  *  *  *."

The decisions of the courts are in line with said provision and hold that, where goods have not been selected and appropriated to the contract, title does not pass to the buyer. (*Lighthouse* v. *Third Nat. Bank,* 162 N. Y. 336, 342; *Cornell* v. *Clark,* 104 id. 451; *American Aniline Products, Inc.,* v. *Nagase & Co., Ltd.,* 187 App. Div. 555.)

I think the trial court erred in directing a verdict in favor of the plaintiff upon the evidence presented; and, as the evidence shows that the plaintiff can never recover upon its alleged contract with the defendants, defendants' motion for a dismissal of the complaint should have been granted.

The judgment appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

DOWLING, LAUGHLIN, PAGE and GREENBAUM, JJ., concur.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.