## GOOD v. RUMSEY.

(Supreme Court, Appellate Division, First Department. April 12, 1900.)

1. PRINCIPAL AND AGENT—UNDISCLOSED AGENCY—AGREEMENT WITH ATTORNEY.
   Where services performed by an accountant, pursuant to an agreement with an attorney at law, were not rendered in a pending action, or to enforce a particular claim of which the former had notice, but related to the ascertainment of the disposition of moneys advanced by a certain person to another, and the attorney did not disclose to the accountant the person for whom he was acting, the attorney is personally liable for the compensation agreed to be paid.

2. SAME—LIABILITY OF AGENT.
   An attorney makes himself liable where he contracts in his own name, and without disclosing the name of his principal, even if the person contracting with him knows that he is acting as an agent.

3. SAME—ACTION AGAINST AGENT—EFFECT OF ADMISSION.
   Though, from information given by defendant to plaintiff at the time the former employed the latter to perform certain services, plaintiff should have inferred that defendant was acting as agent for another, yet a distinct admission by defendant, after the performance of the services, that he was acting for a certain other person, justified a finding that defendant did not disclose to plaintiff the principal for whom he was in fact acting, and thereby rendered himself personally liable on the contract.

Appeal from trial term, New York county.

Action by J. Dobson Good against Frank Rumsey. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

James L. Bishop, for appellant.

J. Arthur Corbin, for respondent.

INGRAHAM, J. The action was brought to recover for work, labor, and services duly performed by the plaintiff at the request of the defendant. The answer denies the allegations of the complaint. The complaint was dismissed at the end of the plaintiff's testimony, to which dismissal the plaintiff excepted, and that exception brings up for review the question as to whether or not, upon the plaintiff's evidence, there was any question to submit to the jury. Assuming the plaintiff's testimony to be true, he was entitled to recover. The plaintiff testified: That a Mr. Megrue introduced him to the defendant, saying: "This is the gentleman that I spoke to you about some time ago,—in case you might want some accounting work done, I told you I would recommend to you. Now, he is here, and wants to talk with you about it." That the work was in reference to some railroad account, "and he told Mr. Rumsey that I was particularly well qualified to do that class of work." The defendant then told the plaintiff "that a Mr. Barse had advanced considerable

sums of money to Mr. Haskell, who was in the office of Mr. Megrue; that they had a joint occupancy of the office at 40 Wall street; that he wanted an accounting from Mr. Haskell, and there were no proper books, and asked me if I would undertake to examine all their check books, drafts, etc., relating to the construction of the Lima Northern Railroad." That the defendant wanted the plaintiff to examine the expenditure made in the construction of that road. That the expenditure of construction and all other payments Mr. Haskell had made on behalf of Mr. Barse. That Mr. Barse had left and sent to Mr. Haskell considerable amounts of money, amounting to some $230,000 or $240,000, and they wanted an account of what had become of this money, and could not get any account from Mr. Haskell, and Mr. Haskell had no books to show them. That the defendant then asked the plaintiff what his terms would be, to which the plaintiff replied: "I said for my own work $25 a day of eight hours, and, if I employed clerks, a certain price, from $10 to $15 a day, depending on the salary I paid clerks I employed;" to which the defendant replied, "that was all right, and he gave me instructions then to proceed with this work, and said that he had arranged with Mr. Haskell, that Mr. Haskell would give me complete access to all documents relating to those transactions." The witness further testified that the defendant did not mention "that he was acting as attorney at all. He wanted the accounts made out, and said he was going to sue Mr. Haskell for any balance due. Only I was to handle Mr. Haskell carefully, or he might refuse to give information, and they could not go on with the suit. That I was to use him carefully, and not be antagonistic with him in any way." This interview took place on June 10, 1897, and on June 12, 1897, the defendant sent to the plaintiff a letter stating that, as to amounts and different items furnished by Barse to Haskell, certain items, amounting to $162,110, were furnished or used in the Lima Northern construction, excepting something like $30,000 paid out by Haskell on other matters for Barse. The plaintiff, under this employment, continued this work until the 20th day of September, when the work was stopped because Haskell informed the plaintiff that the defendant and Haskell had agreed upon a settlement, and on the 7th day of October the defendant told the plaintiff that he need not proceed any further with the matter, as the controversy had been settled. In the following March the plaintiff sent to the defendant his account, amounting to $1,286, to which the defendant replied, on April 26th, saying: "This is a matter which should be adjusted with Mr. Haskell, as the work was done for what is known as the Lima Northern Syndicate, and in a deal between Mr. Barse and Mr. Haskell the latter assumed all the obligations existing against that association." Plaintiff further testified that this was the first time that the plaintiff had ever heard of such an association as the Lima Northern Syndicate, or that he was acting under the employment of Mr. Haskell. In answer to this letter the plaintiff wrote to the defendant that he had received his instructions from the defendant to prepare the account, and naturally looked for his costs from the party who gave the instructions to do the work,

and that the plaintiff had seen Mr. Haskell, who repudiated any liability in reference to it. In reply to this letter, on May 18, 1898, the defendant wrote to the plaintiff:

"I desire to say that you, of course, knew I was acting as attorney in the matter for Mrs. Le Fevre, and your employment was by reason of an agreement assented to by Mr. Barse, Mr. Haskell, and Mr. Megrue, as members of the Lima Northern Syndicate, and Mrs. Le Fevre, a creditor thereof. * * * I feel confident of my ability to substantiate the claim that your employment was by the syndicate to straighten out its books and accounts, of which you know there was ample need, and that you should be paid by that combination. Subsequently, Mr. Haskell assumed all obligations, as far as Mr. Barse is concerned, of the syndicate, which relieves him of any liability. * * * If you will reflect a little upon the purpose of your examination of, and work in connection with, the accounts of the Detroit & Lima Northern matter, it should convince you that I am right in my conclusion as to who were your employers. You certainly knew that I had no personal interest, and was acting as counsel."

Again, in a letter dated May 24, 1898, the defendant states that the work that the plaintiff did was most certainly for the benefit of the Lima Northern Syndicate. "Under an arrangement made between the members of that association, it was work which they were sadly in need of, and since your work was performed Haskell has made a contract assuming the obligations existing against the syndicate, which would include a fair compensation to you for services actually performed." The plaintiff further testified that the defendant did not inform him that he (defendant) was acting as agent or counsel for Mrs. Le Fevre, or for Mr. Haskell, or for any other person; that he knew nothing about the Lima Northern road; that he was informed by the defendant that Barse had advanced, "and when he went to Canada had left a considerable amount of money in Mr. Haskell's hands, and could not get any account, and they were determined to know what he had expended on the road or had paid on Ohio Southern bonds, and for any sum of money which had come into his hands of Mr. Barse, and they wanted a complete account to show the receipt and expenditure of the money"; that he understood that the defendant was an attorney, and that there were indications all the way through that the defendant was personally interested in the matter; that in the account there were several amounts paid to the defendant by checks, and that during all this time up to September the defendant was pressing the plaintiff to continue the work, and objecting to the delay; and that the defendant did not inform the plaintiff that he was there representing a creditor who had a large claim against the association, and that Haskell, Megrue, and Barse had agreed to employ an accountant to have the accounts examined and put them in shape.

At the end of the plaintiff's testimony, the court dismissed the complaint, upon the ground that the defendant was acting as attorney for Barse, and that he was not liable. To that the plaintiff excepted. We think this was error. There was nothing to show that at any time the defendant represented either to the plaintiff or to any one else that he was acting as attorney for Barse, nor does it appear that he ever as a fact did act in that capacity. Subsequent to the performance of the work by the plaintiff, the defend-

ant told the plaintiff that he was acting as attorney for a Mrs. Le Fevre, who, it would appear, was a creditor of Barse; but there was nothing to show at the time of the employment that the defendant stated for whom he was acting, or that he was acting in his own behalf, in employing this plaintiff to perform the services to recover for which the action was brought. The services were not rendered in a pending action, or to enforce a particular claim of which the plaintiff had notice. It is true that the defendant was an attorney at law, but that fact did not prevent him from employing the plaintiff to do a particular piece of work, or from being liable for services actually rendered upon such employment.

The rule is settled in this state that an agent makes himself liable if he contracts in his own name, and without disclosing the name of his principal; and this is so, although the person contracting with the agent knew that he was acting as an agent, if the name of the principal is not disclosed. As was said by Chief Judge Church in Cobb v. Knapp, 71 N. Y. 352:

"It is not sufficient that the seller may have the means of ascertaining the name of the principal. If so. the neglect to inquire might be deemed sufficient. He must have actual knowledge. There is no hardship in the rule of liability against agents. They always have it in their own power to relieve themselves, and when they do not it must be presumed that they intend to be liable."

And in Argersinger v. MacNaughton, 114 N. Y. 539, 21 N. E. 1023, the court affirm this principle, and say:

"When there is, in fact, a principal, the agent may ordinarily relieve himself from personal liability, upon a contract made in his behalf, by disclosing his name at the time of making it. Upon such disclosure, however, the party proceeding to deal with the agent may or may not, as he pleases, enter into contract upon the responsibility of the named principal; but to permit an agent to turn over to his customer an undisclosed, and, to the latter, unknown, principal, might have the effect to deny to the customer the benefit of any available or responsible means or remedy or relief founded upon the contract. The rule is no less salutary than reasonable that an agent may be treated as the party to the contract made by him in his own name, unless he advises the other party to it of the name of the principal whom he assumes to represent in making it, where that is unknown to such party."

There was in this case no disclosure of the fact that the defendant was employing the plaintiff as agent or attorney for any one, nor was the name of any principal for whom the defendant was acting disclosed to the plaintiff. The fact was disclosed that there were accounts between Haskell and Barse relating to the moneys advanced by Barse to Haskell, and that the defendant desired an accounting so as to ascertain what disposition Haskell had made of Barse's money. Considering the nature of the employment, it might be assumed that the plaintiff would understand that the defendant was acting for other persons in desiring to obtain this information to secure which the plaintiff was employed, but there was no direct disclosure by which the plaintiff could have notice of the particular person or client for whom the defendant was acting. Nor did the defendant in any of his communications, either before or after the employment, claim that Barse was his client.

The admission by the defendant in his letter of May 18, 1898, that

he was acting as attorney for a Mrs. Le Fevre, was a distinct admission that he was not acting as attorney for Barse in employing the plaintiff; and, even assuming that it could be held that from the information given by the defendant to the plaintiff at the time of the employment the plaintiff was bound to infer that the defendant was acting as attorney for Barse, this distinct admission that he was acting for another client, and not for Barse, would justify a finding of the jury that the defendant did not disclose to the plaintiff the principal for whom he was in fact acting, and thus justify the jury in finding a verdict for the services rendered against the defendant. The defendant, having employed the plaintiff to perform this service, was primarily liable to him for the value of the services rendered under such an employment. To relieve himself from liability, it must appear that at the time of the employment the defendant informed the plaintiff that he was acting as agent or attorney for some other person, and disclosed to the plaintiff the name of the person for whom he was actually acting. Upon this evidence the jury might find that the defendant was acting for this Mrs. Le Fevre, a creditor of Barse and his associates; but the evidence is distinct that the defendant never disclosed that fact to the plaintiff. Nor were there any facts disclosed from which such an inference could be drawn. Upon the whole case, therefore, we think that the question as to whether or not this defendant, at the time he employed the plaintiff, did disclose to him the name of his principal, was for the jury. The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.