West Street Warehouse, Inc., Plaintiff, *v.* American President Lines, Ltd., Defendant, and Judson-Sheldon Corporation et al., Impleaded Defendants.

Supreme Court, Trial Term, New York County, December 5, 1945.

*Martin M. Kolbrenner* for plaintiff.

*William G. Symmers* for defendant.

*Arthur Power* for Judson-Sheldon Corporation, impleaded defendant.

*Edward G. Bathon* for Youngstown Steel Car Corporation, impleaded defendant.

BLAIR, J.  This is an action by the bailee of frustrated cargo to recover the balance of storage and trucking charges remaining due after the foreclosure of a warehouseman's lien and the sale of the stored goods.  The contract was made with the owner of the S. S. *President Monroe,* the cancelation of whose projected voyage to Hong Kong upon the outbreak of war on December 7, 1941, necessitated the storage of cargo pending communication with shippers.  The steamship company impleaded the freight forwarding agent, Judson-Sheldon Corporation, who had delivered the cargo to the pier.  The basis of the cross complaint was wrongful refusal, upon frustration of the voyage, to accept redelivery of the goods, and to remove them from the pier.  The freight forwarding agent in its answer denied liability, averring that it was acting solely as agent for Youngstown Steel Car Corporation in delivering the goods to the steamship company, and that its principal had contracted for space on the S. S. *President Monroe* directly with the steamship company.  The latter thereupon served a new cross complaint against both the freight forwarding agent and its principal.  This cross complaint alleged wrongful conduct on the part of both agent and principal in refusing to take back the goods and remove them.  Jurisdiction of Youngstown Steel Car Corporation was obtained by attaching assets in this jurisdiction.  The defense interposed by that corporation was that it disclaimed any interest in the goods.

In support of the defense of want of interest, Youngstown Steel Car Corporation offered proof that the goods were manufactured for and sold to the Chinese Purchasing Cómmission and that title passed to the buyer when the goods were delivered to the Pennsylvania Railroad at Niles, Ohio.

No valid reason has been advanced why plaintiff's contract with American President Lines, Ltd., should not be enforced according to its terms.  The warehouse receipt contained the words " all charges up to the time transfer is made are chargeable to the storer of record."  Moreover the bailor inserted its

own name as " storer of record " to gain for itself the protection it needed against any misuse of its outstanding dock receipt, which had not been surrendered for cancelation upon the frustration of the voyage, and the bailor disclosed the name of no other person to whom plaintiff could look for reimbursement. (Cf. *Good* v. *Rumsey*, 50 App. Div. 280, 284.) I therefore direct judgment against the defendant, American President Lines, Ltd., in favor of the plaintiff for the sum of $3,650.50, with interest from the various dates as of which the component items in this total became due, and with costs.

The cross complaint against Judson-Sheldon Corporation, the freight forwarding agent, must be dismissed since the steamship company knew it was acting as agent for a disclosed principal. See in this connection, among other things, the dock permit, the export declaration, and the testimony of the witness Lauckhardt, not objected to by Youngstown Steel Car Corporation, that the latter had booked space for the goods in question through the steamship company's Cleveland office. The export shipping instructions which Youngstown Steel Car Corporation gave to Judson-Sheldon Corporation also contain clauses exonerating the latter from liability and placing squarely upon the former all responsibility for storage charges.

The cross complaint against Youngstown Steel Car Corporation presents a more difficult problem, but I am of opinion that it must be sustained, and that this corporation is liable for whatever sums, including costs, the steamship company has to pay the plaintiff in consequence of this decision, but without additional costs. Several considerations conduce to this result.

In the first place, Youngstown Steel Car Corporation failed to reveal to the steamship company the arrangement between it. and its customer, and hence is estopped by its silence from now taking the position that it has no interest in the goods and that it will reject all responsibility for expenses incurred for their preservation.

In the second place, the disclaimer of responsibility as of the moment the goods were placed on board the train at Niles, Ohio, is inconsistent with other contemporaneous and later acts on the part of Youngstown Steel Car Corporation. It retained Judson-Sheldon Corporation to perform on its behalf various acts upon the arrival of the goods in New York, including the act of making out in its name the export declaration, of which the steamship line was given a copy. Some measure of responsibility for the goods. thus clearly survived their departure from Niles, Ohio.

In the third place, when Youngstown Steel Car Corporation disclaimed all interest in the goods merely because they were sold f. o. b. Niles, Ohio, it acted without thorough analysis of the nature of a contract embodying such a term. A seller who has shipped goods f. o. b. his own place of business may nevertheless retain a security title therein. (1 Williston on Sales [2d ed.], § 280b. And see *Boss* v. *Hutchinson,* 182 App. Div. 88, 90; *Pottash* v. *Cleveland-Akron Bag Co.,* 197 App. Div. 763, 769, affd. 235 N. Y. 520; *Dannemiller* v. *Kirkpatrick,* 201 Pa. 218, 224.) Since in the case at bar there was testimony by an officer of the seller that the seller had not yet been paid, it had an interest in seeing to it that the goods were not dealt with by the steamship company in such a way as to impair the security of which, at the moment of frustration, the seller still stood in need. When, therefore, the steamship company stored the goods, it took steps calculated to redound to the seller's benefit. Those steps were not the subject of remonstrance or repudiation on the seller's part, though ample opportunity was afforded for the seller to exhibit such an attitude. All that it did prior to suit was to suggest that its own agent should bear the burden, a position inconsistent with a principal's duty both to his agent and to third parties. Hence, upon well-settled principles of quasi contract, the seller is liable. (*Chase* v. *Corcoran,* 106 Mass. 286; *Great Northern Ry. Co.* v. *Swaffield,* L. R. 9 Ex. 132; *Cargo ex Argos,* L. R. 5 P. C. 134, 165; *Dahl* v. *Nelson, Donkin & Co.,* 6 App. Cas. 38.) In the last-cited case, Lord WATSON said (p. 59) : " I have always understood that, when the parties to a mercantile contract such as that of affreightment, have not expressed their intentions in a particular event, but have left these to implication, a Court of Law  *  *  *  must assume that the parties intended to stipulate for that which is fair and reasonable, having regard to their mutual interests  *  *  *."

The steamship company contends that the seller is also liable under the bill of lading, which I admitted into evidence upon the authority of *The Toledo* (30 F. Supp. 93, 97, affd. 122 F. 2d 255, certiorari denied *sub nom. Isbrandtsen-Moller Co.* v. *The Toledo,* 314 U. S. 689) and other cases cited in Knauth on Ocean Bills of Lading (p. 214), because it was incorporated by reference into the dock receipt although, owing to the frustration of the voyage, it was never actually issued. I shall refrain from passing upon the question. I prefer to place the seller's liability upon quasi-contractual principles. As was well said by Viscount SIMON, L. C., in *Constantine Steamship Line* v. *Imperial Smelting Corporation* ([1942] A. C. 154, 163) :

"* * * when 'frustration' in the legal sense occurs, it does not merely provide one party with a defence in an action brought by the other. It kills the contract itself and discharges both parties automatically." (And see *The Claveresk*, 264 F. 276, 282–283.)

It is not fanciful to suggest that if the shoe had been on the other foot, and the steamship company upon frustration had dumped the goods in the Hudson River instead of storing them, Youngstown Steel Car Corporation would have been the first to ask a court of law for relief against the outrage. (Cf. *Manhattan Shoe Co. v. C. B. & Q. R. R. Co.*, 9 App. Div. 172, 174; *Cargo ex Argos, supra.*)

Settle judgment on notice.