■ In the Matter of ANGELINA BERTINO et al., Respondents, v SAMUEL KALMANASH et al., Defendants, KARMAX REALTY, INC., Appellant. — In a proceeding by purchasers at a first foreclosure sale to recover their deposit, Karmax Realty, Inc., appeals from an order of the Supreme Court, Westchester County (Daronco, J.), dated November 30, 1982, which granted the application to the extent of directing the referee, Samuel Kalmanash, to return to the respondent purchasers the sum of $16,000. Order reversed, on the law, without costs or disbursements, and application denied. The Village Savings Bank commenced a mortgage foreclosure action against the owners of real property known as 216 Irving Avenue, Port Chester, New York. After a judgment of foreclosure was entered, Samuel Kalmanash was appointed as referee to advertise and conduct the foreclosure sale. At the sale, conducted in May, 1981, the respondents Angelina Bertino and Carmine Cappola were the successful bidders when their high bid of $160,000 was accepted by the referee. The sum of $16,000, in cash, representing 10% of the purchase price, was delivered to the referee at the time of sale, and a contract of sale for the purchase of the property was executed at the same time. Subsequent to the sale, the plaintiffs found themselves unable to raise the balance of the purchase price and complete their purchase of the realty. The Village Savings Bank then made application for an order (1) directing the referee to readvertise and resell the property under foreclosure, (2) directing the respondent purchasers to pay the referee any deficiency there may be on a resale and the costs and expenses accruing as a result of the resale, and (3) directing the referee to retain the $16,000 down payment pending the resale. By order dated September 22, 1981, Special Term (Ferraro, J.), granted the application to, *inter alia,* readvertise and resell the property and further stated: "If the resale price is equal to or larger than the present bid, there will be no deficiency and the plaintiff may not be prejudiced by the failure of the buyers to comply with the terms of the sale. Under such circumstances, the referee may retain the down payment until the resale, after which either party may take such action as is deemed necessary." The resale, as ordered, occurred on November 17, 1981 at which time the property was sold to a bidder other than the respondents for $120,500, or some $40,000 less than the amount that they had originally bid. The lien of the first mortgagee was approximately $116,000 and therefore the $120,500 received on resale created a surplus exceeding $4,000 over said lien. The referee took that sum, added to it respondents' $16,000 deposit on the initial bid, thereby creating a surplus fund of slightly over the $20,000, and deposited the fund with the Commissioner of Finance of Westchester County. Thereafter, respondents moved, *inter alia,* for an order directing the referee to return to them their deposit of $16,000. In opposition to the motion, Karmax Realty, Inc., the holder of a second mortgage on the property, argued that (1) a return of the $16,000 to plaintiffs would remove that sum from the surplus moneys in which it was entitled to share and (2) a return of the $16,000 down payment to respondents could only be directed if the resale price was equal to or greater than respondents' initial bid, which of course, it was not. In granting respondents' motion to the extent of directing the referee to return the $16,000 to them, Special Term held, *inter alia,* that the first mortgagee had suffered no deficiency by virtue of the resale, and that the prior order of Special Term, dated September 22, 1981, which directed the resale, "did not explicitly adjudge that the first bidders be liable for any deficiency between the amount of their bid and the sum for which the real property might sell on such resale". It has long been held that an order of resale in a mortgage foreclosure action may, by its provisions, hold a defaulting purchaser at the first sale liable for any deficiency between the bid at the first sale and that

obtained on the resale. Under those circumstances the deposit paid in by the defaulting purchaser at the first sale may be used towards eliminating such a deficiency, rather than returned (*Phelan v Downs,* 50 App Div 282, 287, affd 173 NY 619; *Miller v Collyer,* 36 Barb 250; *Willets v Van Alst,* 26 How Prac 325; *Richardson v Searles,* 37 Misc 33; 13 Carmody-Wait 2d, NY Prac, § 88:45; 3 Jones, Mortgages [8th ed], § 2102). The order of Special Term dated September 22, 1981 clearly foresaw, by its express terms the possibility that a deficiency might be created between the bid at the first sale and the amount actually paid at the second sale, and effectively provided that the defaulting purchasers on the first foreclosure sale, i.e., the respondents herein, would be liable for any such deficiency. Accordingly, Special Term erred when it granted the respondents' application to the extent of directing the referee to return their $16,000 deposit (*Phelan v Downs, supra; Willets v Van Alst, supra; Richardson v Searles, supra*). Mollen, P. J., Damiani, Titone and Mangano, JJ., concur.