*954 OPINION OF THE COURT
Jack J. Cannavo, J.
The motion by the plaintiff, Michael Rakosi, for an order directing the Referee, John Braslow, to turn over the sum of $13,000 and for payment of a further allowance for fees in the sum of $750 and the cross motion by the purchaser is granted only to the extent that the Referee is directed to pay the sum of $12,250 into court by depositing same with the Suffolk County Clerk. The Referee shall collect an additional fee of $750 upon the filing of Office of Court Administration form OCA-830.
The plaintiff herein is the holder of a third mortgage which went into default. Judgment was entered on November 9, 1984. A sale was held on December 18, 1984, at which time Jeffrey Gleis successfully bid $93,000 in order to purchase the plaintiff’s interest in the property. Pursuant to the terms of the sale, Jeffrey Gleis deposited $13,000 with the Referee.
The terms and condition of the sale stated, in part:
"2nd The residue of said purchase money will be required to be paid to the said Referee at his office No. 1469 Deer Park Ave., N. Babylon, New York, on or before January 18, 1985, at 10:00 o’clock A.M. when and where said Referee’s deed will be ready for delivery.
"3rd The Referee is not required to send any notice to the purchaser, and if he neglects to call at the time and place above specified, to receive his deed, he will be charged with interest thereafter on the whole amount of his purchase unless the Referee shall deem it proper to extend the time for the completion of said purchase.
"6th The biddings will be kept open after the property is struck down; and in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will again be put up for sale, under the direction of said Referee, under these said terms of sale, without application to the Court, unless the Plaintiff’s attorney shall elect to make such application; and such purchaser will be held liable for any deficiency there may be between the sum for which premises shall be struck down upon the sale and that for which they may be purchased on the re-sale, and also for any costs or expenses occurring on such re-sale.”
Although Gleis deposited $13,000, he never closed title. After numerous adjournments, Gleis and his attorney appeared for the closing. Gleis refused to close. Gleis claims that *955 before he purchased the property, Rakosi assured him that he would receive the land free and clear of all encumbrances. However, the property herein was clearly sold subject to certain liens. Gleis signed the terms of the sale and is bound by the written contract he signed (March v Marasco, 165 App Div 348).
Gleis claims he refused to close title because of three title objections. The first title objection was the right of the United States of America to redeem within 120 days from the date of the foreclosure sale. The property was sold subject to "any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale”. Since Gleis agreed to these terms of sale in writing, his first objection is specious.
Gleis also claims that his title company listed 19 judgments entered against the mortgagor as liens. The plaintiff’s attorney, however, has submitted proof that these liens were not valid objections for the purchaser to use to refuse to close.
The judgments listed as items 1, 2, 3, 6, 10, 11, 15 and 16 were not against the mortgagor, Robert Stein. The plaintiff obtained satisfactions for judgments 4, 5, 8, 12, 13, 14 and 17. The property was sold subject to exceptions 9 and 19. Finally, Gleis’ title insurance company received a letter of indemnity from American Title Company which indemnified the title insurance company for these exceptions. Therefore, Gleis’ failure to close on the ground of unsatisfied liens on the property is without merit.
Finally, Gleis alleges that the first mortgage on the property was being foreclosed by the mortgagee, Margaret Trotta. The lis pendens in that action was filed on December 4, 1984. Since Gleis expressly took subject to this mortgage pursuant to the terms of the foreclosure sale, he cannot now raise the Trotta mortgage as a defense.
Gleis has also alleged that RPAPL 1371 prevents the plaintiff from obtaining the down payment of $13,000 deposited with the Referee. The terms of the sale in foreclosure, to which Gleis consented, states that Gleis may "be held liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale and that for which they may be purchased on the re-sale, and also for any costs or expenses occurring on such re-sale”.
This is the sole measure of liability of Gleis. There is no statement in the terms of the sale which states that the *956 deposit will be forfeited. Neither do the terms require the entry of a deficiency judgment before damages are calculated (see, RPAPL 1371).
As a result of Gleis’ default on the sale, the plaintiff appears to have been damaged by substantially more than $13,000 (Weber v Callaghan, 28 AD2d 924). Gleis’ bid was for $93,000. Upon resale on July 2, 1985, the plaintiff was the successful bidder in the sum of $4,000. The purchaser, Gleis, has submitted himself to the jurisdiction of the court as to all matters connected with the sale (15 Carmody-Wait 2d, NY Prac § 92:288). This does not mean that the purchaser may raise tangential peripheral issues which require trials for resolution. The purchaser claims that he expended $2,584 for repairs on the foreclosed residence even though he never took title to the house. While the purchaser may be entitled to reimbursement or offset as to these sums, he must institute a separate action for resolution of this matter. Similarly, this court will not determine the damages due plaintiff from the purchaser pursuant to the terms and conditions of the sale dated December 18, 1985 as part of this foreclosure action. Therefore, the Referee is directed to pay into court the sum of $12,250 which represents the $13,000 deposited minus $750. This money shall be deposited with the Suffolk County Clerk. The Referee is entitled to an additional fee of $750 in light of the work performed on behalf of the court and the mortgagee. He will be entitled to said sum only upon the filing of OCA form No. 830. The Referee, John Braslow, is directed to contact by telephone the chambers of Justice Cannavo within 20 days in order to facilitate the filing of said form.
(On Reargument, July 1, 1986)
The plaintiff, Michael Rakosi, has moved to reargue a memorandum decision of this court dated December 31, 1985. On the first motion the plaintiff moved for an order directing that certain funds be turned over to him as a result of the failure on the part of Jeffrey Gleis to take title to property sold at a foreclosure sale.
The plaintiff herein is the holder of a third mortgage which went into default. The plaintiff commenced a foreclosure action against the defendant mortgagor and entered judgment in 1984. On December 18, 1984, the property was sold to Jeffrey Gleis who successfully bid $93,000 in order to purchase the plaintiff’s interest in the property. Pursuant to the terms of the sale, Jeffrey Gleis deposited $13,000 with the Referee.
*957 The terms of the sale stated: "The biddings will be kept open after the property is struck down; and in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will again be put up for sale, under the direction of the Referee, under the same terms of sale, without application to the Court, unless the plaintiff’s attorney shall elect to make such application; and such purchaser shall be liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale and that for which they may be purchased on the resale, and also for any costs or expenses occurring on such resale.” After numerous adjournments of the closing, Gleis and his attorney appeared but once again refused to tender the moneys due on May 20, 1985. As a result of this default, the plaintiff was required to renotice the sale of the property and sell the property at a second sale.
While the deposit of the defaulting purchaser may be applied to the payment of any deficiency (Riggs v Pursell, 66 NY 193; 13 Carmody-Wait 2d, NY Prac §§88:43, 88:45), the amount of the deficiency in this matter has not as yet been determined. Although the terms of the sale provided that the purchaser would be liable for any deficiency that there might be between the sum for which the premises were struck down upon the sale and that for which the premises were purchased upon a resale, it did not provide that the 10% deposit be forfeited as damages if the purchaser defaulted (Phelan v Downs, 59 App Div 282, affd 173 NY 619). This does not mean that the defaulting purchaser may recover his deposit (Matter of Bertino v Kalmanash, 94 AD2d 794). It only means that the 10% deposit on the purchase price is not automatically forfeited.
Where, as here, the deficiency is undisputably substantially in excess of the deposit, the court will order the deposit, presently held by the County Treasurer, to be turned over to the plaintiff.
The purchaser has argued that RPAPL 1371 (3) bars the plaintiff from collecting the difference between the sum for which the premises were struck down upon the sale and that for which they were purchased upon resale. However, RPAPL 1371 (3) concerns only a mortgagor’s obligation when the moneys obtained by the sale does not cover the mortgage debt. The purchaser herein is not a mortgagor and, therefore, RPAPL 1371 (3) is not applicable to him.
*958 Accordingly, this court will grant the plaintiff’s motion to reargue only to the extent that the moneys presently held by the County Treasurer shall be released to the plaintiff.
Submit order.